867 So.2d 476 (2004)
Rebecca ANDREWS, Appellant,
v.
David ANDREWS, Appellee.
No. 5D02-3091.
District Court of Appeal of Florida, Fifth District.
February 13, 2004.
Rehearing Denied March 17, 2004.
*477 Tracy S. Carlin of Mills & Carlin, P.A., Jacksonville, for Appellant.
Barry S. Sinoff of Law Offices of Barry S. Sinoff, P.A., Jacksonville, and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellee.
SHARP, W., J.
The former wife, Rebecca Andrews, appeals from a final judgment of dissolution of marriage. She raises five issues on appeal, only one of which we find has merit: that the trial court erred in imputing the sum of $50,000 per year in income to her. She claims that there was insufficient evidence to establish she could presently obtain employment which would pay her that amount in the Jacksonville area where she resides. We agree and reverse.
Rebecca and David Andrews, the former husband and the appellee herein, were married on May 19, 1979 and have one child. They separated on August 2, 1999. At the time of the trial, Rebecca was 44 years old and David was 46. During the marriage, both parties held well-paying jobs and they enjoyed an affluent lifestyle. They owned a home worth approximately $700,000, took vacations out of the country, had expensive furnishings, and belonged to the Ponte Vedra Inn & Club.
Rebecca was employed by BellSouth for a total of fourteen years. The parties previously lived in Alabama, where Rebecca earned an overall average income of $50,000 for a number of years while working for BellSouth. She resigned from that job in October of 1996, when the parties moved to Jacksonville to accommodate David, who had accepted a promotion and transfer within his company. BellSouth did not have a position available for Rebecca in its Jacksonville office at that time, and she was forced to take a sabbatical.
She returned to work for BellSouth in October of 1998 when a position became available for which she was qualified. She earned a total (base and commission) of $75,466 per year at this job. However, BellSouth terminated her in April of 2000 because she had failed to keep up with technological advances. William K. Pyle (Pyle), the sales manager for the North Florida area and Rebecca's former boss, testified in a deposition that the services Rebecca had been selling appeared to be too complex for her. At the time of the trial, Rebecca had not obtained other employment.
David is a branch manager and registered securities principal for AXA Financial. He testified at the trial that the weak economy and the events of September 11 had caused his company to have a down year, thereby lowering his income. Nevertheless, David estimated at trial that his income would be approximately $220,000 for 2002. The court found that, due to the length of the parties' marriage and other factors, Rebecca should be awarded permanent alimony. However, because it imputed $50,000 earned income to Rebecca, it awarded her only $2,500 per month in permanent alimony.
The trial court also found that this was a long term marriage and that Rebecca was entitled to maintain the affluent lifestyle the parties enjoyed during their marriage. The court said that the marital assets distributed to Rebecca should not be required to be spent as a source of support for maintaining a comfortable lifestyle. It found that Rebecca did not have current income sufficient to maintain herself within the lifestyle established during the marriage; that her current sole source of support *478 was alimony and that her inability to earn sufficient income from wages or investments necessitated the establishment of security for her alimony award.
To impute income to a former spouse, the trial court must find that the unemployment is voluntary, and resulted from either the spouse's pursuit of his or her own interests, or a less than diligent and bona fide effort to find employment paying at a level equal to that formerly enjoyed. Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991). The record in this case is sufficient for the court to have imputed income to Rebecca in some amount.[1]Ensley.
However, where, as here, the court imputes income in an amount which is not apparent from the record, the court must specifically indicate the amount and source. Zanone v. Clause, 848 So.2d 1268, 1271 (Fla. 5th DCA 2003). See also Zubkin v. Zubkin, 823 So.2d 870 (Fla. 5th DCA 2002); Batson v. Batson, 821 So.2d 1141 (Fla. 5th DCA 2002); Vitek v. Vitek, 661 So.2d 965 (Fla. 5th DCA 1995); Strickland v. Strickland, 639 So.2d 149 (Fla. 5th DCA 1994). In determining the amount of income to impute, the court must consider the spouse's recent work history, his or her occupational qualifications, and the prevailing earnings in the community for that class of available jobs. Clayton v. Lloyd, 707 So.2d 407, 408 (Fla. 4th DCA 1998); Neal v. Meek, 591 So.2d 1044 (Fla. 1st DCA 1991); Cushman v. Cushman, 585 So.2d 485 (Fla. 2d DCA 1991).
David failed to establish by testimony or evidence a range of salaries being paid for current and available employment opportunities in the Jacksonville area for which Rebecca was qualified.[2] Rebecca testified that she had been unable to find any suitable employment in the Jacksonville area. She said, at first, she had looked for employment comparable to that which she had held at BellSouth, in the telecommunications industry, with BellSouth's vendors. However, the current economic conditions had severely hampered the communications industry, and BellSouth implemented a hiring freeze. She then attempted to obtain other employment by applying for jobs with companies outside the communications industry, including PGA, Glaxco Smith Kline, South Trust Bank, Bank of America and Publix and had also registered with a local employment agency and with online job search websites. Rebecca did not have a bachelor's degree, and she testified she could not earn $50,000 per year without this degree.
The only evidence in the record in this case as to the availability of jobs for which Rebecca might be qualified came from Pyle, her former supervisor at BellSouth. In his deposition, he testified about Rebecca's possible re-employment possibilities. Pyle believed she could be successful in selling services that were less complex than the ones she had been selling for BellSouth. However, he said that at BellSouth, she could not make the same base salary in those positions as she had been making in her previous position, which had been $44,100. Instead, he testified she could only earn a base salary at an "entry level" of $30,000, if she were rehired at BellSouth. But, having been terminated by BellSouth for cause, there was no assurance *479 she would ever be rehired by BellSouth.
As noted above, there must be substantial competent evidence in the record to support the level of income imputed to a spouse. See Gerthe v. Gerthe, 857 So.2d 306, 307 (Fla. 2d DCA 2003); LaFlam v. LaFlam, 854 So.2d 809 (Fla. 2d DCA 2003). In this case, the only evidence regarding Rebecca's income was her prior salary of $75,466 earned in 2000, and a past earnings history record averaging $50,000 per year, before 1996 when the parties resided in Alabama.
Rebecca's prior income, although relevant, is insufficient to support the amount currently imputed to her. As we said in Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994),
Past average income, unless it reflects current reality, simply is meaningless in determining a present ability to pay. Past average income will not put bread on the table today.
Woodard, at 782-783.
Rebecca's more recent job and income at BellSouth are no longer available to her. Pyle's deposition reveals that Rebecca is incapable of selling the complex services of that position. Further, even if she could be rehired by BellSouth, her base salary range would only be $30,000, not $44,100.
We must therefore reverse the amount of income imputed to Rebecca and remand to the trial court for further proceedings to establish a level of imputed income for Rebecca supported by competent evidence. We also authorize the trial court to revisit the level of the permanent alimony award depending on the amount of income it imputes to Rebecca, on remand. For these purposes, the court may consider current or additional testimony and evidence. In all other respects, the final judgment is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED.
MONACO, J., and SMITH, M.T., Associate Judge, concur.
NOTES
[1] In addition to other evidence, Rebecca had been offered a job at Publix, but turned it down because of the hours involved.
[2] The party asserting that the spouse is voluntarily unemployed or underemployed has the burden of proof. See generally, Blanchard v. Blanchard, 793 So.2d 989, 992 (Fla. 2d DCA 2001).