911 So.2d 262 (2005)
Joseph Raymond BURKLEY, Appellant,
v.
Sandra Sue BURKLEY, n/k/a Sandra Sue Averbeck, Appellee.
No. 5D04-2172.
District Court of Appeal of Florida, Fifth District.
September 30, 2005.
*264 Carol A. Volini, Ocala, for Appellant.
William H. McDonald, III, Ocala, for Appellee.
THOMPSON, J.
Joseph Raymond Burkley appeals the final judgment that imputed his income retroactive to July 2000, established child support arrearage, and modified child support. The court erred because it failed to make the requisite findings to justify modification and violated statutory limitations on retroactivity. We reverse.
Burkley and his former wife, Sandra Sue Averbeck, were married for seven years and have two children. Following their 1998 divorce, Burkley's original monthly child support obligation was $776 per month, but in December 1999, the court issued an order that temporarily set his child support at $100 per week. Burkley and Averbeck later reached a partial mediation agreement ("Mediation Agreement") regarding child custody, support, and visitation in February 2000. Paragraph Three formed the basis for the decision on appeal:
The FH shall continue to pay child support to the FW of $100.00 per week until... the FH obtains employment. At said time the FH shall inform the FW of his employment and his pay and the parties shall attempt in good faith to agree upon the FH's new child support obligation. If the parties are unable to agree either party may file a motion *265 with the Court with reasonable notice of the hearing on the motion being provided to the other party, and the Court shall determine the FH's child support obligation which shall begin with the FH's first paycheck received from his employment. The Court shall specifically retain jurisdiction to determine this issue upon the filing of said motion. (emphasis added).
The trial court incorporated this agreement into an order, entered 13 March 2000, that reads in part:
3. The Husband shall pay child support in the amount of ONE HUNDRED and NO/100 ($100.00) DOLLARS per week,...
* * *
In addition, the payor shall also inform the Clerk ... of any change of employment ... Should any dispute arise over the amount of child support figure, this Court reserves jurisdiction... to make a final determination of that figure.
* * *
4. That the [Mediation Agreement] entered into between the parties on February 11, 2000, is hereby ratified and approved... This [Mediation Agreement] shall not be merged with or into the [Stipulated Order], but shall survive as a separate, enforceable contract on its own and shall be enforceable by either party as such.
5. With regard to the issues of permanent child support, ... the parties shall attempt to agree upon same upon the Former Husband's employment and ... in the event an agreement cannot be reached, either party may bring the issues before the Court by motion.
6. That this Court reserves jurisdiction of the parties hereto and the subject matter hereof the entry of such other and further Orders as may, from time to time, be necessary.
(emphasis in original).
In October 2000, Averbeck petitioned for modification of child support ("First Petition") because Burkley had begun working. Burkley countered with a request to modify his support obligation. Burkley alleged that they had agreed in July 2000 to maintain the $100 weekly payments. The court entered an order in December 2000 that disposed of various issues, but did not discuss child support. There was no further action on the First Petition until its dismissal for lack of prosecution in February 2004.
Burkley began working as an RV salesman in July 2000 and quit in July 2001. His gross monthly income from employment ranged from $2,218 to $2,888. His last job was with Terminex, from January 2002 until April or May 2002, where his gross monthly income was approximately $1,679. He left Terminex to begin college through a VA vocational rehabilitation program ("VA Program") for which he was eligible due to his medical discharge from the United States Marine Corps in September 1999. The discharge stemmed from a spinal injury and two surgeries that fused two of his vertebrae.
Burkley received a disability letter from the VA, dated 27 August 2001, that related the following service connected conditions:
1. We found your lumbar fusion L5-S1 60% disabling.
2. We found your chondromalacia, left knee 10% disabling.
3. We found your chondromalacia, right knee 10% disabling.
The percentages of your individual disabilities may not add up to your overall evaluation. We use a "combined rating table" to decide how disabled you *266 are.... Your overall or combined evaluation is 70%.
Burkley began receiving monthly disability payments in January 2002 for approximately $1,000, which increased by the final hearing to $1,134. He began the VA Program for college, through which he received tuition, fees, books, required supplies, a subsistence allowance, and medical and dental benefits. The monthly subsistence allowance paid approximately $680 by December 2003. Through this program, Burkley attended community college from May 2002 and graduated in December 2003 with honors. The program is expected to lead to a Masters Degree in Rehabilitation Counseling in May 2008, after which he may seek a position as a vocational rehabilitation counselor with the VA. He was unemployed during school.
Averbeck filed a supplemental petition for modification and claim for breach of contract ("Second Petition") in October 2003 that alleged a substantial change in Burkley's income and the children's needs. The claim for breach of contract was based on the Mediation Agreement. Burkley contended that his income and the children's needs had not substantially changed and, further, that Averbeck did not need, and he did not have the ability to pay, increased child support. He denied any material breach of contract, alleging that his unemployment and college attendance resulted from his spinal injury, back surgeries, 70% disability rating, and participation in the VA Program to become gainfully employed by the VA.
At the March 2004 hearing on the motions, Averbeck explained that she never pursued the First Petition because she didn't do the paperwork properly and Burkley threatened to just quit his job. Nevertheless, she did not pursue the First Petition after she discovered he quit Holiday World. She stated Burkley told her that he was getting a six-year degree because the children would almost be grown up by the time he finished. She did not approve of his decision to go to school. Her gross monthly income was $2,071 in late 2000 and $4,006 in 2003.
Burkley related his employment history and explained that he did not know about college options when he signed the Mediation Agreement. He attempted to testify about an upcoming MRI and the possibility of additional back surgery. But the court sustained a relevance objection, stating: "It's not an issue that he has a disability. I think that's been addressed." Burkley also explained that a prospective employer had told him in 2001 that his spinal injury would prevent him from meeting the job's demands. Accordingly, he did not disclose his disability to Terminex in 2002. After graduating from community college, he sought employment by talking with a disabled veteran career counselor. The counselor told Burkley that his spinal injury would complicate acquiring employment, but offered him additional work study once he resumed college. Burkley claimed he informed Averbeck about his employment in 2000 and denied threatening to quit work.
The VA paid Burkley approximately $1,800 monthly while he was in college. When asked whether he could expect similar income at a job, the court sustained Averbeck's objection. Burkley conceded that he had worked full-time for four or five months after discovering his 70% disability rating in August 2001.
In ruling, the judge stated: "I haven't heard any evidence that he would not be able to attain  well ... I haven't heard any evidence ... specifically on what he could do and not do." The judge explained that a showing of substantial change of circumstances was unnecessary for breach of contract, the basis for her decision. *267 Notwithstanding the decision to rule based upon breach of contract, virtually all of the ruling and judgment relied on the court's interpretation of Chapter 61, Florida Statutes (2003). The court noted that its March 2000 order was temporary and had not addressed permanent child support. Accordingly, it increased Burkley's support obligation retroactive to 1 July 2000 because it found that he breached his expressed or implied promise to obtain and maintain employment.
The court observed that, although specific findings are required to impute income, the statute afforded it discretion. It found that Burkley was partially disabled, but could work because he had worked full-time at two places and could have continued working, but he quit. The court noted testimony that Burkley made some effort to find employment and did not find evidence that he intentionally avoided his support obligation. It made no findings on Burkley's employability or qualifications: "I don't know what his abilities were, what else he could do, I know what he did."
The court recalculated Burkley's child support obligation retroactive to July 2000, computed instant arrearages of $13,397.98, and declined prejudgment interest on the support award. It is from this judgment that Burkley appeals.
While the duty to pay child support may arise from common law or statute, contract, or a confusion of both, Department of Health and Rehabilitative Services v. Holland, 602 So.2d 652, 654 (Fla. 5th DCA 1992), Florida statutory law and contract law are separate and distinct sources for the obligation. Zolonz v. Zolonz, 659 So.2d 451, 452 (Fla. 4th DCA 1995). Contracts regarding the support of minor children remain subject to the plenary power of the state to control, regulate and discretion to enforce. Zolonz, 659 So.2d at 452; see also §§ 61.13(1)(a), 61.14(1)(a). The mere existence of an agreement addressing support for minor children does not permit the court to disregard the statute's explicit limitations on modifying support, imputing income, or awarding retroactive support.[1]
The Mediation Agreement here does not fall into the category of contracts offering support beyond that provided for in the statutes. Settlement agreements are subject to interpretation like any other contracts. Levitt v. Levitt, 699 So.2d 755, 756 (Fla. 4th DCA 1997). "A settlement agreement should not be disturbed unless found to be ambiguous or in need of clarification, modification, or interpretation." Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996). Ambiguities should be resolved in accord with the children's best interests. Grasso v. Mulholland, 835 So.2d 361, 361 (Fla. 5th DCA 2003).
There are no ambiguities in the Mediation Agreement: There are no provisions to impute income or to make retroactive awards. It provided that, at the time of employment, the parties should attempt to agree on a new support obligation, and failing that, "either party may file a motion with the Court." Averbeck filed two motions in 2000 after learning of Burkley's employment. One was not prosecuted, and the other did not reach the subject of child support. Averbeck took no action after Burkley quit Holiday World in 2001, after he began working for and quit Terminex *268 in 2002, or when he entered the VA Program in 2002.
Section 61.14(1)(a) expressly delineates the court's power and, more important in this case, its limitations when considering a petition for modification of child support. Upon a party's application and with "due regard to the changed circumstances or the financial ability of the parties or the child," the court may increase or decrease child support retroactively to the date of the filing of the action. In addition, section 61.14(2) prohibits parties or courts from sidestepping the provisions governing modification of child support agreements for minors.
The party moving for modification must show: (1) a substantial change in circumstances, (2) not contemplated at the time of final judgment of dissolution, (3) that is sufficient, material, involuntary, and permanent in nature. Overbey v. Overbey, 698 So.2d 811, 814 (Fla.1997); Laliberte v. Laliberte, 698 So.2d 1291, 1293 (Fla. 5th DCA 1997). The burden of establishing this change rests on the party seeking modification. Burdette v. Burdette, 681 So.2d 862, 863 (Fla. 5th DCA 1996). The party challenging the correctness of a modification order must demonstrate an abuse of discretion. Niemann v. Anderson, 834 So.2d 319, 321 (Fla. 5th DCA 2003).
Averbeck did not show that the children's needs had increased or that Burkley had the ability to pay more child support. Nor had Averbeck's resources declined; on the contrary, her income had doubled or tripled since 2000. The court erred by basing its decision upon contract law instead of applying the statutory requirements of Chapter 61. Courts may not impose the statute piecemeal  ignoring procedural safeguards and statutory guidelines  simply because the parties signed a mediation agreement.
The court also erred by imputing income to Burkley based on its finding that he was voluntarily unemployed, without making the required findings concerning his employability, occupational qualifications, and prevailing earnings level in the community for individuals in Burkley's position.
The trial court derives its authority to impute income from section 61.30(2)(b), Florida Statutes (2004):
Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community.
(emphasis added).
The trial court may impute income to a spouse it deems voluntarily underemployed. However, section 61.30(2)(b) requires a court to consider the party's recent work history, occupational qualifications, and the prevailing level of earnings in the community for the appropriate class of available jobs. Andrews v. Andrews, 867 So.2d 476, 478 (Fla. 5th DCA 2004). If the trial court does not make the required findings, the record must reveal competent, substantial evidence supporting the trial court's decision. Freilich v. Freilich, 897 So.2d 537, 543 (Fla. 5th DCA 2005). "The party asserting that the spouse is voluntarily ... underemployed has the burden of proof." Andrews, 867 So.2d at 478 n. 2.
*269 In contrast to the required specific findings, mere allegations of employability do not constitute competent, substantial evidence for imputing income. See Blanchard v. Blanchard, 793 So.2d 989, 992 (Fla. 2d DCA 2001). The court must make the required findings even if it finds that the spouse previously quit a well-paying job. Furthermore, "where the person truly cannot find employment that will command the salary earned in the previous job, it would be futile to design support payments based upon imaginary income from unattainable employment." Id.
Burkley contends that the court made no findings concerning his recent work history, occupational qualifications, or the prevailing salary in the field for which he would be qualified. The court imputed income solely because he had worked full-time and quit; it admitted no knowledge of Burkley's abilities during the hearing. One reason the court did not know his abilities was that it sustained an objection to Burkley's testimony about the possibility of further back surgery. The petitioner must show, and the court must find, that the individual facing imputation is actually capable of performing the work for which it is imputing income. Similarly, the court made no findings regarding available jobs for someone with Burkley's qualifications; in this case, available jobs for an individual with one year's experience selling RVs, four or five months' experience in pest control, a medical discharge, and a 70% disability rating.
Averbeck offered no evidence of Burkley's ability to be gainfully employed, relying solely on the fact that he had previously worked. Moreover, Averbeck attempts to shift the burden of proof to Burkley. Since Averbeck is the party alleging voluntary underemployment, she shoulders the burden of proof. Andrews, 867 So.2d at 478 n. 2.
Further, the court must consider disability. Averbeck notes that the VA determined Burkley to be partially disabled, not totally disabled. However, section 61.30(2)(b) does not require total disability; incapacity denotes a lack of physical or mental disabilities. BLACK'S LAW DICTIONARY at 474, 764 (7th ed.1999). Averbeck's point that Burkley failed to provide expert testimony is similarly unavailing. Courts have not required expert testimony to hold that lower courts did not have sufficient evidentiary bases for imputing income against partially disabled spouses. See Gerthe v. Gerthe, 857 So.2d 306, 307-308 (Fla. 2d DCA 2003) (reversing the trial court's finding that the wife could work at least part-time, though she suffered migraines and difficulty walking or sitting, because the finding was not supported by evidence); Tarnawski v. Tarnawski, 851 So.2d 239, 241-242 (Fla. 4th DCA 2003) (reversing the support award "for reconsideration upon a re-evaluation of the wife's ability to contribute to her own support and that of her child"); Gruber v. Gruber, 857 So.2d 329, 330-331 (Fla. 2d DCA 2003) (holding that, despite the wife's assertion that the husband "`should be able to sit behind a computer,' the record contain[ed] no evidence or testimony that the Former Husband was employable or capable of earning an income").
The employment history of a partially disabled spouse is relevant, but does not absolve the court from having to find the ability to work based on sufficient evidence. See, e.g., Smith v. Smith, 737 So.2d 641, 643-645 (Fla. 1st DCA 1999) (holding that husband's psychological disability from Vietnam was outweighed by two decades of Merchant Marine employment in which he eventually earned over $100,000 annually). While receipt of disability *270 benefits does not alleviate the court's responsibility to determine the party's employability, the court should not merely ignore Burkley's disability benefits. VA ratings "represent ... the average impairment in earning capacity resulting from ... injuries[,] and ... the degrees of disability ... compensate for considerable loss of working time." Essentials of Evaluative Rating, 38 C.F.R. § 4.1 (2002). The disability ratings evaluate the body's ability to function "under the ordinary conditions of daily life including employment. Evaluations are based on ... the lack of usefulness ... in self support of the individual." BVA 98-13869, *6 (Bd. of Vet.App.1998); see also Functional Impairment, 38 C.F.R. § 4.10 (2002).
Ultimately, the lower court must account for Burkley's disability in its analysis of employability and ability to pay. The court may not impute income despite not knowing what his abilities are or were when he quit Terminex; nor may it refuse to hear testimony about his current condition when imputing income prospectively. It is relevant that Burkley worked after his disability discharge and after the VA informed him of his 70% rating, but the court erred by ending its inquiry there.
The court must also address Burkley's participation in the VA program before imputing income. A spouse's underemployment while pursuing education or training is almost always voluntary; the appropriate inquiry is whether modifying child support or imputing income is in the children's best interest. See Overbey, 698 So.2d at 812, 814; see also Pribble v. Pribble, 800 So.2d 743, 747 (Fla. 5th DCA 2001). The Florida Supreme Court expressly disavowed any bright-line rule for determining whether temporary reductions in child support payments were justified, recognizing that "in a changing economy ... [c]ourts cannot address this issue in a vacuum. Among other things, the need for retraining when a skill is no longer needed and the need for increased education to enhance income are two very important factors that may need to be considered." See Overbey, 698 So.2d at 815.
Burkley enrolled in college through the VA Program aimed toward a Masters Degree in Rehabilitation Counseling so that he may work as a VA vocational rehabilitation counselor. In addition, the VA Program may offer additional work study. Not only does Burkley face the prospect of higher income after graduation, but under the unique circumstances in this case, he may receive income through the VA Program comparable to what he would receive currently at a full-time job. The fundamental issue is whether the children are receiving adequate support, not whether Averbeck approves of Burkley's college attendance.
Upon remand, the court should consider the children's ages in its inquiry. However, Averbeck's contention that Burkley's program completion would not guarantee a better paying job is irrelevant. Overbey emphasized that the court must consider the need for increased education to enhance income; no guarantee is required. Overbey, 698 So.2d at 815. Likewise, Averbeck's contention that the children's interests would be harmed even if Burkley eventually secured a position paying twice or three times his Terminex salary is questionable. Even if Burkley's VA Program income is smaller than what he would receive in pest control, his potentially higher salary and support contribution after graduation, coupled with VA subsistence and work study, could offset the difference during his participation in the Program.
Finally, we consider Averbeck's concern that the court must not "make the children *271 suffer for four more years." Averbeck earns a gross annual income of $50,000, or approximately 240% of Burkley's gross annual income at Terminex. While Burkley cannot shirk his support obligations, the trial court may discern that the threat to the children's lifestyles posed by Mr. Overbey's educational pursuit is not present here.
The court erred by awarding support retroactive to July 2000. If the court, after following the statutory guidelines and making the required findings, determines on remand that Burkley is voluntarily underemployed, it may only award support retroactive to the date that Averbeck filed the Second Petition. See Warner v. Warner, 692 So.2d 266, 269-270 (Fla. 5th DCA 1997). The retroactivity restriction mitigates the threat of "instant arrearages" and lack of notice, while underlining "the importance of timely application to the court for reduction of support obligations due to a change of circumstances." Kirwan v. Kirwan, 606 So.2d 771, 773 (Fla. 5th DCA 1992) (rejecting the parent's request for a retroactive reduction in child support for the period he was disabled).
Finally, if the court finds that Burkley owes arrears, it would err by declining to award prejudgment interest for arrearages. Courts must award prejudgment interest on arrearages found to be due in the final judgment. Shrove v. Shrove, 724 So.2d 679, 683 (Fla. 4th DCA 1999); Warner, 692 So.2d at 270.
In summation, the trial court erred by reaching its decision using a breach of contract theory rather than Averbeck's Petition for Modification for modification and retroactive support. It erred by granting modification without finding a substantial change of circumstances. It erred by imputing income without making the requisite findings and without considering whether imputation during Burkley's participation in the VA Program served the children's best interests. It erred by awarding support retroactive to a date before Averbeck filed the Second Petition.
We REVERSE and REMAND for further proceedings in accordance with this opinion.
PETERSON and SAWAYA, JJ., concur.
NOTES
[1] Contract law, rather than statutory law, governs promises exceeding the scope of Chapter 61. These include agreements providing support beyond the age of majority or providing more child support than required by section 61.30(6), Florida Statutes. See Southard v. Southard, 756 So.2d 251, 253 (Fla. 5th DCA 2000).