IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


CAROL T. HOLLAND,

      Appellant,

 v.

                                     Case No.  5D23-36
                                     LT Case No. 2019-DR-1941

JAMES R. HOLLAND, II,

      Appellee.

_____/

Opinion filed April 6, 2023

Appeal from the Circuit Court
for Duval County,
Daniel F. Wilensky, Judge.

William S. Graessle, of William S.
Graessle, P.A., Jacksonville, for
Appellant.

Michael J. Korn, of Korn & Zehmer,
P.A., Jacksonville, for Appellee.


EDWARDS, J.

Appellant, Carol T. Holland ("Former Wife"), raises several issues on appeal.[1] One primary issue, the trial court's exclusion of her treating physician's testimony about whether she was able to work, and the related issue of imputing more income to Former Wife than she ever earned, require reversal and remand for further proceedings. The other issues raised by Former Wife, such as the exclusion of her financial expert who had no final opinions shortly before trial, and the denial of her post-trial proffer of documentary proof that the Social Security Administration determined she was disabled, do not support reversal under the circumstances as they existed when the rulings were made; however, the trial court may need to revisit those rulings if there will be a new trial on remand, which seems most likely.[2]

---

[1] For those who are interested, the oral argument of this case on March 8, 2023, was the first one conducted in the Fourth Judicial Circuit by the Fifth District Court of Appeal following the January 1, 2023 realignment of this Court's geographical jurisdiction in connection with the creation of the Sixth District Court of Appeal.

[2] It is our understanding that the judge who tried this case has retired, suggesting that the normal solution of having the original trial judge reconsider matters is unavailable. If our understanding is correct, a new trial will be required. Given the often dynamic flow of parties' financial, health, and employment circumstances, the parties and new judge may find need for additional, updated evidence or issues to be presented and addressed in the new trial.

After more than twenty years of marriage, Appellee, James R. Holland, II ("Former Husband"), filed his petition for dissolution of marriage, following which Former Wife filed her counter-petition seeking child support, alimony, and an equitable distribution of marital assets. Former Wife is an optometrist who, until recently, operated Holland Eye Care, LLC. Former Husband is an experienced plaintiffs' personal injury trial lawyer with his own law firm and an affiliation with a local law firm with a similar, but larger practice.

The parties entered into a mediated settlement agreement that resolved many issues related to their children, equitable distribution of marital assets, possession of the marital home, and other matters, but it did not resolve alimony issues.

Not surprisingly, the parties disputed their relative financial needs and ability to provide for themselves or their former spouse. Each expressed certainty that the opposing former spouse was financially secure, while both claimed near financial disaster for themselves. Former Wife, as an optometrist, had never worked a full-time schedule during the parties' marriage, as she had also fulfilled many of the parties' parenting responsibilities. Her typical annual earnings up to the commencement of dissolution proceedings had been in the neighborhood of $50,000; she closed her practice during the litigation.

3

Former Husband's income varied substantially from year to year, depending on when settlements were achieved and whether he won or lost large cases in which he had advanced the costs on behalf of his injured clients. The trial court found Former Husband's income to be "unpredictable," denied Former Wife's request to average his income earned during the past several years, and ultimately determined Former Husband's income to be approximately $240,000 for 2020.[3]

The COVID pandemic negatively impacted both spouses' income. Former Wife had to close her office for approximately two months. Due to the courts being unable to conduct jury trials during the pandemic, Former Husband reported that many insurance companies lost interest in settling cases, thereby affecting his cash flow dramatically.

Former Wife reported that her monthly expenses were roughly $25,000, leaving her with a monthly deficit of approximately $22,000. She retained Mark Hand to perform forensic accounting and designated him as a trial expert concerning Former Husband's income, expenses, and resulting ability to pay her alimony. Former Wife also stated that Hand would be giving

---

[3] The day after Former Wife's counsel deposed the managing partner of the law firm with which Former Husband was affiliated, he was told to leave. According to Former Husband, this resulted in his business overhead reaching $50,000 per month.

opinion testimony regarding a lifestyle and accounting analysis of Former Wife's earnings and expenses. At Hand's deposition, approximately two weeks prior to trial, he indicated that he had no final opinions. Former Husband moved to exclude Hand, relying on both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[4] and *Binger v. King Pest Control*,[5] and the trial court excluded his testimony entirely, relying on both cases. The exclusion of Hand's testimony on *Daubert* grounds is difficult to analyze, given that he had not formed any opinions. However, we find neither error nor abuse of discretion in excluding Hand's trial testimony, based on *Binger* considerations, given that same lack of final opinions shortly before the trial. Former Wife's argument, if factually supported, that Hand's inability to timely formulate opinions was due to Former Husband's failure to produce requested financial documents, may have been grounds for a motion to compel, but she did not file one. Under the circumstances existing below, the trial court did not abuse its discretion in excluding Hand. The trial court will need to evaluate the relevant circumstances as it sets disclosure and discovery deadlines leading up to conducting a new trial.

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[5] *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981).

5

Former Wife's treating physician, Dr. Bradley Tran, expressed in his deposition the opinion that she had certain medical conditions that would render her disabled from a full-time practice as an optometrist. Former Husband, stating that he was relying on *Daubert*, moved to exclude Dr. Tran's opinions on her disability.[6] He did not challenge Tran's overall qualification to render medical opinions regarding Former Wife's physical abilities. Former Husband's primary argument to exclude Dr. Tran was that contained within Tran's medical records was the report of an abnormal nerve conduction test performed on another person, the otherwise unidentified "D.R." Furthermore, Former Husband pointed out that the nerve conduction test performed on Former Wife was essentially normal.

In moving to exclude or limit Tran's testimony, Former Husband also pointed to the facts that: (1) Tran had not seen the video surveillance of Former Wife that arguably showed her to be physically able to do a wide variety of activities;[7] (2) Tran had not consulted with the surgeon who opined that Former Wife's bilateral carpal tunnel surgery was completely successful, leaving her able to engage in light duty work which is arguably consistent

---

[6] We note that Former Husband was an active attorney-participant in these hearings to exclude Former Wife's experts' testimony.

[7] The surveillance was conducted and video-taped by Former Husband's investigator.

with being an optometrist; (3) Tran was unaware of Former Wife's vigorous exercise program; and (4) Tran did not conduct an in-person physical exam, relying instead on a telemedicine interview. Based on that, Former Husband claimed there was an insufficient basis for Tran's disability opinion.

Dr. Tran was not permitted to testify at the *Daubert* hearing to explain to the court about the "other patient's" report; however, he did file an affidavit saying that this "mystery report" was not part of his file, that he had no patient with the name found on that report, and that he had not relied on the "mystery report" in reaching his opinions regarding Former Wife's disability. Former Husband also filed affidavits from his own experts who criticized Tran's methodology as not being generally accepted given that he relied on another patient's nerve testing. Those experts' affidavits also criticized Tran's failure to engage in the accepted practice of making a differential diagnosis. Former Husband's experts in their affidavits described Tran's resulting opinions as being without proper factual or medical foundation, thus being completely unreliable.[8]

---

[8] Former Husband filed an affidavit from his paralegal saying that the abnormal nerve conduction test report of patient "D.R." was indeed turned over by Dr. Tran as part of his records, to counter Former Wife's suggestions that perhaps "somebody" planted that "mystery report" to gain an advantage.

The trial court concluded that Tran's disability opinion was so lacking in several of the *Daubert* criteria that it would be excluded.[9] Under the circumstances present in this case, the potential problems with the bases for Tran's disability opinion, such as considering the wrong patient's test results and failing to consider other available information, would have been proper fodder for an intense cross-examination of Dr. Tran, but they do not demonstrate a basis for disqualification under *Daubert* in this bench trial. We are compelled to agree with Former Wife that the trial court abused its discretion in excluding Tran's disability opinion testimony, and we reverse for further proceedings.

On a related issue, the trial court imputed annual earnings of $106,525 to Former Wife which assumed full-time employment, despite the undisputed evidence showing she had earned no more than $55,000 while working a reduced schedule each year during the marriage. The court's imputation of income must be based on competent substantial evidence regarding several factors, not the least of which is whether the spouse "is actually capable of performing the work for which it is imputing income." *Burkley v. Burkley*, 911 So. 2d 262, 269 (Fla. 5th DCA 2005). By completely excluding Dr. Tran's

---

[9] Dr. Tran was permitted to testify about other matters; only his opinion regarding Former Wife's disability was excluded.

disability testimony, Former Wife was unable to fully address that issue. Reversal is required. We need not address the additional bases for reversing imputation of income urged by Former Wife.

Former Wife argues, finally, that the trial court abused its discretion in denying her post-trial request to reopen the case so she could offer into evidence a letter from the Social Security Administration, stating that it had determined she was disabled "based . . . on information you gave us." The specific ruling was more a consideration of timing and finality in an effort to bring the former litigation to a close. If proffered again during a new trial, the trial court can entertain all appropriate arguments for and against its admissibility.

AFFIRMED IN PART, REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

LAMBERT, C.J. and WALLIS J., concur.

9