857 So.2d 329 (2003)
Daniel Thomas GRUBER, Appellant,
v.
Norea Gayle GRUBER, Appellee.
No. 2D02-4066.
District Court of Appeal of Florida, Second District.
October 15, 2003.
Jon C. Kieffer of Kieffer & Rahter, P.A., St. Petersburg, for Appellant.
Norea Gayle Gruber, pro se.
SILBERMAN, Judge.
Daniel Gruber (the Former Husband) appeals an order entered on his supplemental petition for modification of alimony. Although the trial court reduced the Former Husband's alimony obligation to Norea Gruber (the Former Wife), he contends that the trial court should have terminated his alimony obligation. Because the trial court improperly imputed income *330 to the Former Husband, we reverse the trial court's order and remand for further proceedings.
The parties had a long-term marriage of twenty-two years. In the final judgment of dissolution of marriage rendered on March 10, 2000, the trial court ordered the Former Husband to pay $350 per week as permanent periodic alimony.
In May 2001 the Former Husband filed a supplemental petition for modification of alimony, alleging that he had a substantial change of circumstances because he was diagnosed with an abdominal aortic aneurysm and could no longer work. An evidentiary hearing was held on the supplemental petition in July 2002.
At the time of the hearing the Former Husband was fifty-nine years old, his education consisted of a GED, and he had previously worked for a lawn maintenance business. The Former Husband submitted a report by Dr. Ralph DeMatteis from April 2001 which states, "In my opinion, I think this patient is totally disabled, particularly as far as manual labor." In June 2001 Dr. DeMatteis performed surgery to repair the aneurysm. Dr. Riad Doss also treated the Former Husband. In a deposition taken in June 2002, Dr. Doss testified that the Former Husband was unable to do any kind of work, even sedentary work. Dr. Doss explained that because of the surgery, the Former Husband has an artificial aorta tube which limits the flexibility of his circulatory system. Dr. Doss opined that the Former Husband would never be able to work again due to the surgery and the Former Husband's hypertension, borderline congestive heart failure, and asthmatic bronchitis. The Former Husband also established that the Social Security Administration determined that he was disabled as of April 2001, and it awarded to him disability benefits of $1063 per month. During his testimony, the Former Husband admitted that sometime after the surgery he had been on a riding lawnmower for about five minutes, he made a trip to Ohio by plane for a relative's birthday, and he drove a car to the hearing that day.
After the conclusion of the testimony, the trial court stated that the Former Husband "is probably capable of doing something to earn some income. Common sense would just indicate that to me. What it is I don't know." In its written order, the trial court noted the Former Husband's testimony as to several activities that he had performed and commented that the Former Husband's behavior was extremely curious for someone described as completely disabled. The trial court then stated as follows:
Notwithstanding the unchallenged deposition testimony of Dr. Doss, this Court doubts that the Former Husband is unable to obtain some form of employment that could accommodate his physical concerns. Granted, he can no longer engage in the type of physical lawn-maintenance employment he was involved with prior to the surgery. Yet, his own testimony admitting to riding a stand-up, commercial riding lawnmower, and the physical requirements involved in driving to the Tampa Airport, dealing with pre-boarding, and then flying to Ohio and back, indeed suggests that the Former Husband is capable of some type of income activity.
The trial court, citing Cowie v. Cowie, 564 So.2d 533, 535 (Fla. 2d DCA 1990), concluded that the Former Husband had shown "a permanent, unanticipated, substantial change in financial circumstances" to justify modification of alimony, and it reduced the Former Husband's obligation from $350 per week to $75 per week (approximately $322.50 per month). However, nothing in the record or in the trial *331 court's findings establishes how the trial court arrived at the modified amount of $75 per week.
The evidence was undisputed that the Former Husband's only source of income was the disability payment of $1063 per month. The record reflects monthly expenses claimed by the Former Husband, although the trial court may have had doubts as to some of those expenses. Even assuming that the trial court believed that certain of the expenses were not legitimate, nothing in the record reflects that the Former Husband is able to pay $322.50 per month in alimony from his limited income. Instead, it appears that the trial court imputed some unspecified amount of income to the Former Husband.
In considering the imputation of income, our standard of review is whether the trial court's determination is supported by competent, substantial evidence. Hinton v. Smith, 725 So.2d 1154, 1156 (Fla. 2d DCA 1998). "A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997). In Wendel v. Wendel, 852 So.2d 277 (Fla. 2d DCA 2003), the trial court imputed income of $65,000 per year in making a child support award. This court reversed and stated that "while the Former Wife did present evidence of the prevailing earnings level in the community, she did not present any evidence that there were positions available at that earnings level or that the Former Husband was qualified for any available positions." Id. at 284.
Here, the record contains no competent, substantial evidence supporting the imputation of income to the Former Husband. While the Former Wife suggested that the Former Husband "should be able to sit behind a computer," the record contains no evidence or testimony that the Former Husband was employable or capable of earning an income. Accordingly, we reverse and remand for the trial court (1) to determine whether the Former Husband has the continued ability to pay any alimony based on the evidence that was presented, without imputing income to the Former Husband, and (2) to enter an order, consistent with the evidence, either reducing or terminating the Former Husband's original alimony obligation.
Reversed and remanded.
VILLANTI and WALLACE, JJ., concur.