936 So.2d 15 (2006)
Todd NADRICH, Appellant,
v.
Renee NADRICH, Appellee.
Nos. 4D03-2749, 4D04-28.
District Court of Appeal of Florida, Fourth District.
June 14, 2006.
Rehearing Denied September 6, 2006.
*16 Hal Vogel, Aventura, for appellant.
Richard G. Bartmon of Law Offices of Bartmon & Bartmon, P.A., Boca Raton, for appellee.
SHAHOOD, J.
Appellant, Todd Nadrich, appeals the Final Judgment of Dissolution of Marriage entered in the trial court. Two appeals were filed and consolidated. This opinion addresses the issues raised in the consolidated *17 appeals in case numbers 4D03-2749 and 4D04-28. We affirm in part, reverse in part and remand for proceedings consistent with this opinion.
Appellant, Todd Nadrich (husband), and appellee, Renee Nadrich (wife), were married for ten years when they separated and thirteen years at the time of the entry of the final judgment. The husband was thirty-nine years old; the wife was forty-six years old. They have two sons, Zachary, born on December 5, 1993, and Robert, born June 24, 1992.
The wife filed a Petition for Dissolution and the husband answered and filed a counter-petition for dissolution. The parties entered into a Partial Mediation Settlement Agreement concerning custody and visitation. Pursuant to the agreement, the children would reside with the mother, with the father having substantial timesharing (forty-six percent).
The parties jointly hired CPA John Bush (Bush). At a temporary relief hearing, the general master relied upon Bush's summaries and projections, over the husband's objections, and entered a report recommending an award to the wife of $4,000 per month for spousal support, $930 per month in child support, and $45,000 in temporary attorney's and accounting fees. This order was the subject of a non-final appeal to this court by the husband and resulted in a per curiam affirmance. See Nadrich v. Nadrich, 861 So.2d 1167 (Fla. 4th DCA 2003).
After a three-day final hearing, the trial court adopted the wife's proposed eighty-two-page final judgment. The husband was found to be delinquent in his payment of temporary support in the amount of $43,004; therefore, the court ordered him to pay the outstanding balance to the wife. The husband was also ordered to pay the wife's attorney's fees in the amount of $72,427, not only because of his ability to pay, but also because they were the direct result of his refusal to comply with various court orders, and the accountant's fees in the amount of $20,000. The final judgment makes it clear, through specific examples, that throughout the course of this litigation, the husband willfully refused to comply with court orders, absconded with marital assets, failed to fully disclose his financial status, and otherwise deliberately thwarted the court's and the wife's efforts to discover information and bring this matter to a close. In total, the court ordered the husband to pay the wife a lump sum amount of $185,190.10, which represented delinquent support, attorney's fees, various costs to experts, and reimbursement for marital assets he depleted.
The first issue we address is whether the evidence supports the trial court's awards of alimony, child support, life insurance, and attorney's fees, and whether evidence of the wife's income sources was improperly excluded.
In the final judgment, the court found that, based on the evidence presented at the final hearing, the husband had the ability to pay the purge amount set forth in a prior order. The court based this finding on not only the fact that the husband continued to borrow money from his parents, but also the facts that (1) the husband's father still had $50,000 from an account that belonged to the husband; (2) the husband never disclosed what happened to the $222,564 in funds from a Bahamian corporation, TOJO, or the $51,409 in funds from a company called TIFU; and (3) based on the husband's financial affidavit, he "obviously has income and/or assets that he is not reporting to the Court and thus has the ability to comply with the purge provision." As a result, the court found that the husband had the ability to pay all support obligations *18 and other financial obligations, including alimony, child support, support arrearages, attorney's fees, costs, and equitable distribution.
Under the circumstances and in light of the husband's failure to comply with many discovery orders to disclose his financial information, the court had no choice but to impute some amount of income to the husband beyond what his pay stubs showed. It was clear to the court that the husband had additional sources of income based on his lifestyle. This finding was supported by Bush's testimony that the husband's spending patterns and income from offshore accounts most likely amounted to an additional $40,000 per year. Bush compared the husband's expenditures with the increase in his debt and found that his credit card debt did not increase at a rate which equated with the increased spending. Bush agreed that there was no corresponding documentation of the unexplained cash flow. For a four-month period that Bush gave as an example, the husband had unexplained income of $9,622 and no documentation to suggest that his debt increased by that amount.
In Bromson v. Department of Revenue, 710 So.2d 154, 155 (Fla. 4th DCA 1998), a similar situation occurred. The husband was self employed and claimed he earned a certain amount, which was much lower than his living expenses reflected. Id. at 155. He did not substantiate his additional income. Nevertheless, the court attributed a higher income to him than he claimed. This court affirmed, explaining that this was not a situation in which the court imputed income to an underemployed party, but rather, merely made a factual determination as to the husband's actual income. Id. at 155. That is precisely what was done in this case, and no specific findings are required. Id. at 155. Because the record contains substantial competent evidence to support the trial court's finding that the husband had annual income in the amount of $115,000, we affirm as to this issue.
Next, the husband contends that, even assuming the income figure was accurate, he is left with little or nothing to live on each month after deductions are taken for alimony ($4,000), child support ($900.69), the equitable distribution equalizer ($4,000), the obligations for fees, costs, and back support ($185,190). An annual income of $115,000 would yield a monthly gross income of $9,583. Monthly obligations imposed on the husband total $8,900. Thus, it is clear that even with his gross income, the husband would be unable to pay the obligations he is required to pay and his own living expenses. Add in taxes and, as the husband argues, he is working at a deficit. We reverse and remand for reconsideration and re-calculation of the support awards, arrearages, attorney's fees and costs, taking into account the husband's income and living requirements.
The next issue we address is whether the husband was entitled to a child support adjustment because of his forty-six percent overnights timesharing.
Section 61.30(11)(b), Florida Statutes (2001), states that, "[w]henever a particular shared parental arrangement provides that each child spend a substantial amount of time with each parent, the court shall adjust any award of child support" accordingly. Contrary to the wife's argument here and at trial, this court has held that the adjustment is mandatory, not discretionary. See Harwood v. Ying Li, 909 So.2d 396 (Fla. 4th DCA 2005); Migliore v. Harris, 848 So.2d 1250 (Fla. 4th DCA 2003)(holding that the trial court was required to adjust the child support obligation under section 61.30(11)(b)); Santiago *19 v. Santiago, 830 So.2d 922, 923 (Fla. 4th DCA 2002)(holding that the language of the statute is mandatory and finding an abuse of discretion where the trial court failed to reduce the former husband's child support award even though he did not request it); see also Seiberlich v. Wolf, 859 So.2d 570 (Fla. 5th DCA 2003)(holding that section 61.30(11)(b) also applies to modification proceedings where initially agreed upon guidelines child support did not take into account a parent's substantial time sharing with the minor child); Keeley v. Keeley, 899 So.2d 387 (Fla. 2d DCA 2005) (holding that the statutory adjustment is mandatory).
The wife acknowledges that "[t]here is no dispute that the Husband's visitation met the 40% threshold requirement under § 61.30(11)(b)10, Florida Statutes." Thus, reversal and remand is required for the court to adjust the husband's child support obligation accordingly.
The husband also contends that, in violation of Perlow v. Berg-Perlow, 875 So.2d 383, 390 (Fla.2004), it was error for the trial court to adopt, verbatim, the wife's proposed final judgment. The wife responds that Perlow is distinguishable from this case because, here, both parties were represented by attorneys and both consented to the procedure of simultaneously submitting proposed orders to the court. Moreover, the wife contends that the fact that the trial judge omitted one paragraph from her proposed judgment, as well as the fact that he entered his ruling thirty-three days after trial and nine days after the submission of the proposed orders, indicates that he independently considered the facts and issues. Compare Perlow, 875 So.2d at 389 (trial court entered final order two hours after submission of proposed orders).
In addition, as held in Perlow, "[a] judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions." 875 So.2d at 388. This was the procedure followed by the trial court in this case, as opposed to the procedure followed in Perlow where the trial judge "actively discouraged the husband from filing a proposed final judgment." See Perlow, 875 So.2d at 388.
We accordingly affirm as to this issue and all other issues raised by appellant.
Affirmed in part; Reversed in part and Remanded for proceedings consistent with this opinion.
KLEIN, J., and GERBER, JONATHAN D., Associate Judge, concur.