984 So.2d 678 (2008)
Carol Betina McCANTS, Appellant,
v.
Tyrone Lee McCANTS, Appellee.
No. 2D07-473.
District Court of Appeal of Florida, Second District.
July 9, 2008.
*679 Theodore N. Taylor of Law Office of Theodore N. Taylor, P.A., Plant City, for Appellant.
No appearance for Appellee.
SILBERMAN, Judge.
Carol McCants (the Wife) appeals a final judgment of dissolution of marriage and challenges the trial court's rulings concerning equitable distribution, imputation of income, alimony, emancipation of the parties' older child, and attorney's fees. Tyrone McCants (the Husband) acted pro se in the trial court and filed no brief in this appeal. We affirm the dissolution of marriage; the trial court's determination that the parties' seventeen-year-old daughter, who had her own child, was emancipated; and the grant of shared parental responsibility of the remaining minor child, Jaron, with the Wife designated as primary residential parent and the Husband designated as secondary residential parent. We reverse the financial aspects of the judgment, including the determination of the parties' incomes, alimony, Jaron's child support, equitable distribution, and attorney's fees and remand for the trial court to reconsider these issues.
The parties were married for six years but had also lived together for the previous twelve years. Their daughter, Katrina, was born in 1989, and their son, Jaron, was born in 2004. At the time of the final hearing, both children and Katrina's one-year-old child lived with the Wife.
The trial court conducted the final hearing on December 12, 2006, and only the parties testified. The Husband worked as a long-distance truck driver. Our record contains 1099 forms for the Husband that reflect approximate income of $197,000 for 2003, $215,000 for 2004, and $268,000 for 2005. The record also contains the Husband's financial affidavit, which is somewhat confusing. It reflects gross income for 2005 of $268,450.70, but it also lists *680 monthly gross income of $20,000 and a net monthly income of $18,900. The affidavit also reflects substantial expenses related to the Husband's trucking job, most notably $4000 per month for "diesel for work" and "loading and unloading labor" of $2000 per month. The affidavit shows total monthly expenses of $13,291. Then, in the summary portion of the affidavit, it states the Husband's total present monthly net income as "$8000 (varies)" even though page 3 of the affidavit states his net monthly income as $18,900. The Husband subtracted expenses of $13,291 from the income amount of $8000, reflecting a monthly deficit of over $5000.
The Husband testified that some of the monthly expenses shown on his financial affidavit were trucking expenses. He also testified that over the course of several years trucking revenues had decreased and diesel and oil prices had increased. The Husband's tax returns are not contained in our record, but in response to the court's question as to the amount of income on which he pays taxes he stated, "I pay taxes on thirty  between 30,000 to 32,000." He testified that he and the Wife managed to make the monthly payments on their debts and that his contribution was sometimes $2500, although sometimes he paid more.
The Wife testified through a sign language interpreter. She worked for the Husband for nine years, from 1995 to 2004. She did paperwork and helped move furniture. She was not paid all the time, and she "didn't always know how much."
The Wife testified that she has been on disability for about seven years. She explained, "I used to work at Wal-Mart, but then my back it seemed to hurt me all the time and so they gave me disability for that." She also testified that because she is deaf it was very difficult to look for a job. The Wife received $865 in disability income per month, and her daughter, Katrina, received $432 per month based on the Wife's disability. Katrina's disability income was used for household expenses, but her payments would end when she turned eighteen.
The Wife's updated financial affidavit reflects a monthly net income of $865 comprised of her Social Security disability benefits. The affidavit shows expenses of $4113.03 for a monthly deficit of $3248.03, and it values the marital home at $200,000 with a mortgage of $100,551.04. The monthly mortgage payment was $1192.33. The parties' affidavits reflect various credit card accounts and other liabilities.
The Wife testified that she was forty years old, that she had not worked outside the home from the time Jaron was born in 2004, and that she stays home and cares for Jaron. She graduated from high school in 1984 and completed a vocational computer data entry course in 1986.
The Wife stated that she could not afford to keep the house, to buy a vehicle, or to pay insurance without help from the Husband and that she also needed help for utilities and other bills.

Imputation of Income to the Wife
The trial court found that the Wife could earn a net income amount of $100 per week, resulting in imputed income of $433 per month. Thus, with the Wife's disability income of $865 per month, the trial court determined her total monthly income to be $1298. The Wife contends, and we agree, that the trial court did not have competent, substantial evidence to support its finding concerning imputed income. See Gruber v. Gruber, 857 So.2d 329 (Fla. 2d DCA 2003); LaFlam v. LaFlam, 854 So.2d 809 (Fla. 2d DCA 2003).
Gruber involved an alimony modification proceeding. The former husband's income consisted of only disability benefits, and a *681 doctor testified that the former husband "was unable to do any kind of work, even sedentary work." 857 So.2d at 330. The former husband admitted that after his surgery "he had been on a riding lawnmower for about five minutes," that he had taken a trip by plane, and that he drove himself to the hearing. Id. The trial court determined that the former husband was "probably capable of doing something to earn some income. Common sense would just indicate that to me. What it is I don't know." Id. The trial court imputed an unspecified amount of income to the former husband when it ordered him to pay a reduced amount of $75 per week alimony. Id. at 331. This court reversed the reduced alimony award because the record contained no competent, substantial evidence to support an imputation of income. Id. This court pointed out that although the former wife had testified that the former husband "`should be able to sit behind a computer,' the record contains no evidence or testimony that the Former Husband was employable or capable of earning an income." Id.
Similarly, in LaFlam, we reversed the imputation of $4000 per month income to the former wife. We concluded that the imputed amount was not supported by the evidence and reiterated that "there must be competent, substantial evidence supporting the conclusion that the spouse could earn the imputed amount." 854 So.2d at 810.
Here, the Husband failed to put on any evidence that the Wife was employable. The Wife receives Social Security disability benefits as a result of back problems that began while she worked at Wal-Mart. However, there was no testimony regarding when she worked there, how much she earned, or what duties she performed. Although the Wife worked for the Husband from 1995 to 2004 doing paperwork, invoicing, and helping move furniture, she stopped working when their son was born in 2004. She stayed home to take care of their son, who was two years old at the time of the final hearing. She also explained that it was very difficult for her to look for a job because she is deaf.
The Husband had the burden to present evidence of the Wife's employability. See Burkley v. Burkley, 911 So.2d 262, 269 (Fla. 5th DCA 2005) (stating that the party asserting voluntary underemployment of the other spouse "shoulders the burden of proof"). The record contains no evidence that there were positions available for the Wife. In addition, in imputing $100 of net income per week to the Wife, it is unclear whether the trial court took into account the cost of child care for the parties' young son. Based on the record before us, we reverse the court's determination that the Wife could earn $100 net income per week and remand for the trial court to reconsider the alimony provisions based on the Wife's income without the imputed income.

The Husband's Income
In the final judgment the trial court recognized that there was conflicting testimony regarding the Husband's income and stated that the Husband claimed his income was between $2000 and $2500 per month, while the Wife claimed that his income was over $9000 per month. The trial court then proceeded to find, without explanation, that the Husband's net monthly income was $4500. The Wife's counsel argues on appeal that the Husband's net income "is much greater than" the trial court's finding of $4500. However, the Wife's counsel does not suggest on appeal what finding the trial court should have made as to the amount of the Husband's net income.
In Rodriguez v. Rodriguez, 958 So.2d 436, 436 (Fla. 3d DCA 2007), the Third District reversed a determination that the *682 husband's income was $80,000 when the evidence failed to support an imputation of income or that the husband actually earned that amount. The court remanded for the trial court to reconsider the husband's income and to reconsider the alimony and child support awards. Id. at 437; see also LaSala v. LaSala, 806 So.2d 602, 603-04 (Fla. 4th DCA 2002) (determining that error in calculating the husband's current net income required reversal and remand for reconsideration of alimony, child support, and attorney's fees). The Third District in Rodriguez also noted that the trial court could change the equitable distribution, if appropriate. 958 So.2d at 437 n. 3.
Here, the Husband's 1099 forms, his financial affidavit, and his testimony reflect expenses and varying amounts of gross and net income. Subtracting the business expenses from the various income amounts gives differing results, none equal to the $4500 monthly income amount determined by the trial court. The trial court did not explain how it arrived at a net income amount of $4500 per month, and based on the record before us, we are compelled to reverse and remand for the trial court to reconsider this issue.
It is well-established that the trial court must determine each spouse's income for purposes of alimony and child support. See Pavese v. Pavese, 932 So.2d 1269, 1270 (Fla. 2d DCA 2006) (citing §§ 61.08(2)(g), .30(2), Fla. Stat. (2003)). The court's determination of a party's net income must be supported by competent, substantial evidence. See Matias v. Matias, 948 So.2d 1021, 1023 (Fla. 2d DCA 2007). In a case such as this one involving a significant dispute in a party's income, meaningful appellate review is hampered by the absence of findings as to how the trial court determined the income amount. See generally Pedersen v. Pedersen, 892 So.2d 1125, 1127 (Fla. 2d DCA 2004) (stating that a final judgment must contain specific findings of fact and conclusions of law that will allow meaningful appellate review). On remand, after determining the Husband's income, the trial court must also reconsider the amount of alimony, child support, the equitable distribution of assets and liabilities, and attorney's fees. See Rodriguez, 958 So.2d at 437; LaSala, 806 So.2d at 604.

Alimony
The trial court considered the parties' marriage to be a long-term one of eighteen years and awarded to the Wife $400 per month in permanent, periodic alimony and $600 per month in lump-sum alimony for sixty months.[1] The court required the Husband to purchase a reliable, used vehicle for the Wife as bridge-the-gap alimony. The Wife contends that the trial court abused its discretion in awarding only $400 per month in permanent alimony and that even the permanent award combined with the lump-sum award is insufficient. The Wife points out that the combined payment of permanent and lump-sum alimony is less than the mortgage payment on the marital home.
The Wife's total monthly income is $865. Her financial affidavit reflected monthly expenses of $4113.03. Although her affidavit listed a liability of $761.95 per month for a vehicle loan, the trial court awarded the vehicle to the Husband and ordered that he be responsible for the debt. Without that debt, her financial affidavit would reflect a monthly deficit of $2486.08.
*683 Based on our disposition of the issues regarding the parties' incomes, the trial court must reconsider the issue of alimony on remand. We note that the primary factors for the trial court to consider are the Wife's need for alimony and the Husband's ability to pay. See Kelley v. Kelley, 967 So.2d 924, 926 (Fla. 2d DCA 2006). In Kelley this court determined that "the trial court abused its discretion in awarding an amount of alimony that left the Wife substantially unable to meet her basic needs, let alone enjoy the standard of living she enjoyed during the marriage." Id. Considering the circumstances here, including the Wife's disability, a permanent alimony award of only $400 per month would leave the Wife substantially unable to meet her basic needs. In addition, on remand the trial court must make the findings required by section 61.08(2), Florida Statutes (2005). See Searcey v. Searcey, 923 So.2d 528, 529-30 (Fla. 2d DCA 2006).

Marital Home
The Wife contends that the trial court abused its discretion in failing to award the Husband's interest in the marital home to the Wife as lump-sum alimony. The trial court made an equitable distribution of the home and granted the Wife the exclusive use and possession of the home until the parties' younger child attains the age of majority. Section 61.075 requires the trial court to distribute the parties' marital assets and liabilities. The equitable distribution of the parties' assets and liabilities is within the trial court's broad discretion, and this court's standard of review is for an abuse of that discretion. See Hollister v. Hollister, 965 So.2d 341, 343-44 (Fla. 2d DCA 2007); Sharon v. Sharon, 862 So.2d 789, 791-92 (Fla. 2d DCA 2003). The home is the parties' only significant asset, and we cannot say that the trial court abused its discretion in failing to award it as lump-sum alimony. However, based on our remand on the other issues, it will be necessary for the trial court to reconsider the equitable distribution.

Distribution of Other Marital Assets and Liabilities
The Wife contends that the trial court erred in failing to distribute all marital assets and liabilities, as required by section 61.075(3). The record reflects that the trial court directed the Wife's counsel to draft the final judgment and sent a memo of its findings to the Wife's counsel to enable counsel to draft the judgment. At the end of the memo, the trial court stated, "If there is anything I have neglected to address, I request that it [be] brought to my attention within 10 days of today."
Rather than advise the trial court that it had failed to value and distribute all of the parties' marital assets and liabilities, the Wife's counsel apparently prepared a final judgment without the required findings and distribution of assets and liabilities. The court subsequently entered that judgment. The Wife's counsel suggests that the financial affidavits, the Wife's exhibits, and the testimony identify the marital assets and liabilities. It does not appear, however, that the Wife's counsel prepared a schedule of assets and liabilities to assist the court in the equitable distribution.
Arguably, the Wife's counsel waived the argument being made on appeal by failing to notify the trial court, as the trial court requested in its memo, of any issues that the court did not address. However, because we are remanding for the trial court to reconsider the parties' incomes, along with the alimony and child support, we direct the trial court to reconsider the equitable distribution as well. In doing so, the trial court must make findings regarding the value of the marital assets and *684 liabilities and designate which spouse is entitled to each asset and responsible for each liability. See § 61.075(3).

Attorney's Fees
In her petition, the Wife sought attorney's fees and costs, alleging her need and the Husband's ability to pay. At the final hearing, the Wife testified that she incurred attorney's fees and costs but that she could not afford to pay them. She requested that the Husband pay them. No evidence was adduced regarding the amount of the fees. In closing, the Wife's counsel requested an entitlement award and stated that they could "deal with the numbers at a later date."
In the final judgment the trial court found that the Wife had a need for contribution from the Husband for her attorney's fees and that he was in a superior position to pay them. The court ordered the Husband to contribute $1000 to the Wife's fees. Because our record contains no competent, substantial evidence to support the amount of the award, we reverse the fee award. If on remand, after reconsidering the alimony, equitable distribution, and child support, the trial court again determines that the Wife has the need and the Husband has the ability to pay for attorney's fees, the trial court shall conduct a hearing to determine the amount and reasonableness of the fee award. See Steele v. Steele, 617 So.2d 736, 738 (Fla. 2d DCA 1993); Sullivan v. Sullivan, 677 So.2d 986, 987 (Fla. 5th DCA 1996).

Conclusion
Accordingly, we affirm the dissolution of marriage and the grant of shared parental responsibility of the remaining minor child, Jaron, with the Wife designated as primary residential parent and the Husband designated as secondary residential parent. We reverse the financial aspects of the judgment, including the determination of the parties' incomes, alimony, Jaron's child support, equitable distribution, and attorney's fees and remand for the trial court to reconsider these issues.
Affirmed in part, reversed in part, and remanded.
CASANUEVA and DAVIS, JJ., Concur.
NOTES
[1] The Husband did not file a cross-appeal or appear in this appeal. No one has challenged the determination that the marriage qualified as a long-term marriage and that permanent alimony is appropriate.