WARNER, J.
 

 After this court reversed the monetary awards in the prior final judgment of dissolution of marriage in
 
 Posner v. Posner,
 
 988 So.2d 128 (Fla. 4th DCA 2008), the trial court refashioned the awards. The husband appeals again, claiming that the court erred in imputing income to him from his parents, requiring the husband to pay the wife’s non-marital credit card liability, and allowing the wife a time period of 71 years in which to pay the equalizing payment on equitable distribution of marital assets. We affirm the attribution of income to the husband but reverse the recalculation of equitable distribution offset based upon the credit card liability. We also reverse as to the terms of repayment of the equalizing payment by the wife.
 

 In
 
 Posner
 
 we set forth the salient facts from the final judgment:
 

 She has net non-marital assets of just over $417,000; he has just over $98,000. They have net marital assets of $55,000. In dividing the marital property equita
 
 *413
 
 bly, the court ordered her to pay him $91,520, leaving each with $27,506 in marital assets. At the same time, the court awarded her lump sum alimony of $91,520. The effect of these awards is to leave him with net marital assets of (- $64,000), and her with net marital assets of $119,026. As a result, he has been left with total assets of $34,242; she with $536,026.
 

 He has net monthly income of $4,134. The trial court ordered him to make [$4,109 in payments for bridge the gap alimony, child support, and other child expenses].
 

 Id.
 
 at 129.
 

 In reversing the awards, our instructions were as follows:
 

 We do not single out any specific award, finding only that as a whole the awards here leave him in a hole and thus constitute an abuse of discretion. We remand to the trial court for a thorough re-evaluation of financial circumstances of the parties and to fashion an award consistent therewith.
 

 Additionally, the trial court determined that $12,214 in credit card debt was a non-marital liability of the wife. But in calculating the assets and liabilities of the parties, the court applied this debt as a marital liability. This too should be corrected on remand.
 

 Id.
 
 at 130.
 

 On remand, the trial court did not change the equitable distribution of assets but vacated the lump sum alimony award to the wife. The court assigned the non-marital credit card liability to the husband, and dropped the equalizing payment due from the wife to the husband to $85,413, making it payable at $100 per month. The court reduced the bridge the gap alimony award from $2,500 to $1,000 per month. It set child support at $1,648 by imputing $1,400 income to the husband in the form of the rental value of the home provided for him by his parents. It continued the husband’s obligation to pay 80% of the children’s medical expenses not covered by insurance. The husband appeals the amended final judgment.
 

 The husband claims that the trial court failed to follow our opinion in imputing $1,400 in income to him for child support purposes. Our opinion did not mention the imputation, although the husband raised it as an issue in the appeal. We did state that the husband’s income was $4,134, an amount which did not include the imputed income. We used the husband’s net earned income to show that the actual amount of sums awarded by the court to the wife of $4,106 exceeded his ability to pay. We did not decide whether the court erred in imputing the $1,400, and we directed the court to thoroughly reconsider the financial situation of the parties. Particularly where we reversed all monetary awards for reconsideration, the law of the case doctrine did not preclude the trial court from imputing income to the husband again on remand, because that issue was not specifically decided by us on the first appeal.
 
 See Fla. Dep’t of Transp. v. Juliano,
 
 801 So.2d 101,102 (Fla.2001).
 

 The trial court imputed as income for child support purposes $1,400 per month, because the parents were allowing the husband to live rent free in a home they purchased and continued to hold for him. Before that, for a period of time they had paid rent on an apartment for him. At the original trial, both parents testified that they did not intend that such assistance continue, but the husband’s mother testified that she would provide necessary living expenses such as food and shelter to her son, if he needed them. The wife’s real estate appraiser testified that the rental value of the home was between
 
 *414
 
 $1,800 and $1,900. When the appraiser went to view the home shortly before trial, it did not appear to be for sale, although the husband’s mother testified that they intended to sell the home. Substantial other income was paid to the husband during the divorce proceedings, but the parents testified that all of the other living expenses were loans to the husband.
 

 In the original final judgment the trial court concluded the larger amounts of income could not be imputed, because the parents did not intend to continue such payments. The court specifically rejected the application of
 
 Ordini v. Ordini,
 
 701 So.2d 663 (Fla. 4th DCA 1997), in which this court allowed the imputation of gifted income to the husband where the parents had given the couple monthly support on a regular basis throughout a twelve-year marriage and testified that they intended to continue supporting their son.
 

 Nevertheless, despite its rejection of
 
 Or-dini
 
 as applying to the larger sums of money that the parents paid to their son, for purposes of child support the court attributed $1,400 in income to the husband as the value of the rent of the home in which his parents allowed him to live. The court found that this was appropriate pursuant to section 61.30(2)(a)13., Florida Statutes, which requires inclusion in income of “Reimbursed expenses or in kind payments to the extent that they reduce living expenses.” The parents’ provision of the home in which the husband lived rent free may qualify as an in-kind payment to the husband. Although generally such payments are employer-related, nothing in the statute precludes any such payments to the extent that they reduce living expenses.
 
 See, e.g., Garcia v. Garcia,
 
 560 So.2d 403 (Fla. 3d DCA 1990) (living expenses of husband paid for by his father should be considered pursuant to section 61.30(2)(a)13., Florida Statutes, in determining husband’s income for purposes of child support).
 

 We conclude that the court did not abuse its discretion in imputing the rental value to the husband as in-kind income. Not only had the parents paid such expenses for an extended period of time, the husband’s mother testified that she would pay for his expenses of shelter should he need it. The trial court could infer from the testimony that the parents would continue to allow their son to live rent free until his income level increased to the point where he could “pay his own way,” so to speak. Under the circumstances of this case, we conclude that the court did not abuse its discretion in attributing this in-kind income to the husband for purposes of supporting his three children.
 

 In his second issue, the husband claims that the court erred in failing to give him credit for the non-marital portion of the credit card liability that he was required to pay. In our prior opinion we stated that the trial court erred in treating it as a marital liability and directed the trial court to correct this error. On remand the trial court did not correct it but simply determined that the husband was required to pay the wife’s non-marital liability. We reverse this calculation.
 

 In the original final judgment, the trial court determined that the husband’s net assets amounted to a negative $51,800 (- $51,800), and the wife’s share of net assets amounted to $119,026. Adding those figures provides a difference in net assets between the parties of $170,826. To equalize the distribution, the husband should receive from the wife an equalizing payment of $85,413. This calculation was made without taking into consideration the wife’s $12,214 non-marital credit card liability that the husband was required to pay, because he was obligated on the credit card to pay its entire balance. In our
 
 *415
 
 prior opinion we directed that he be given credit for that amount. Therefore, to follow our specific directions, the court was required to add this liability to the amount that the wife owed on the equalizing payment or to pay it in another method. If adding it to the net marital asset equalizing payment, the total amount should then be $97,627 ($85,413 + $12,214).
 

 The trial court also required the wife to repay the equalizing payment at $100 per month on the ground that the wife could afford no more. At $100 per month, it will require over 70 years to pay the husband. We conclude that to deprive the husband of the majority of the assets of the marriage for the rest of his life is an abuse of discretion in this case.
 
 See Canakaris v. Canakaris,
 
 382 So.2d 1197 (Fla.1980).
 

 The wife is not without means. She has nearly $500,000 in marital and non-marital assets, including some cash. She had interests in several development and real estate companies of unknown value. Requiring a $100 per month payment based solely on the wife’s present income does not take into consideration future changes in the wife’s circumstances, including her future employment prospects, asset acquisition/disposition, or remarriage which could impact her ability to repay this amount. But because the repayment of the equitable distribution amount over time is a property division, those payments would not be subject to modification in the future without a specific reservation of jurisdiction.
 
 See Brandt v. Brandt,
 
 525 So.2d 1017, 1018-19 (Fla. 4th DCA 1988).
 

 We reverse the award, directing that the court increase the equalizing payment to $97,627. We further require that the trial court refashion the repayment of this amount so that the husband is not foreclosed from a more expeditious repayment of the amount of the equalization payment. This could be accomplished by various methods. Those may include, but are not limited to: providing a shorter payout period, including a lump sum repayment after a few years; repayment from the sale of various of the wife’s assets, particularly the marital home; or allowing the amount to be reduced to judgment so that the husband is permitted to collect it from the wife’s assets. Except for the option of simply reducing the equalizing payment to judgment, the court should retain specific jurisdiction over the future repayment provisions to account for changed circumstances. The court cannot, however, retain jurisdiction to change the amount of the original equalization payment, which is a set property division between the parties.
 
 See Brandt.
 

 In sum, we affirm the award of child support to the wife and reverse the equitable distribution payment with directions to the court to comply with the provisions of this opinion. In all- other respects, we affirm the final judgment, specifically rejecting the husband’s other claims that the awards are otherwise excessive.
 

 DAMOORGIAN and LEVINE, JJ„ concur.