VILLANTI, Judge.
Gregory George, the former husband, appeals the trial court’s final judgment awarding the former wife, Tammy George, $89,034.57 in attorney’s fees and costs. The court ordered the former husband to pay the award at the rate of $3200 per month. The former husband claims trial court error, inter alia, in finding entitlement to fees, the amount of fees, and the manner in which payment was ordered. We affirm on all issues, except one. Because we have been unable to corroborate the trial court’s calculations regarding the former husband’s net income and resulting ability to pay the award as ordered, we reverse in part and remand for further proceedings on this issue only.
The parties, both in their forties, were married fourteen years. Them marriage produced no children. The couple’s only major marital assets were a house — which was worth less than its mortgage and was in foreclosure — and the former husband’s retirement account, which the court found that he had improperly liquidated and spent. The only other issue was whether the former wife was entitled to some type of alimony. The trial court found that, but for the former husband’s obstreperous behavior, the parties should have been able to quickly resolve all issues and obtain a final judgment of dissolution. Yet, the case spiraled out of control, languished in the trial court since 2007, and has been the subject of four interlocutory appeals all filed by the former husband.[1] The record contains competent, substantial evidence supporting the trial court’s conclusions except on two related issues. As explained below, this warrants a limited reversal for further fact finding.
I. Trial Court’s Tax Findings
The former husband argues that the trial court’s tax findings were not based on competent, substantial evidence. The former husband’s financial affidavit indicated that his gross monthly salary was $10,649, subject to the following deductions: $2631.42 (federal, state, and local income tax), $642.35 (FICA), and $150.24 (Medicare). The final judgment on fees concluded that the former husband’s taxes were exaggerated:
The Former Husband lists $2,631.42 for federal and state taxes, $642.35 for FICA and $150.24 for Medicare for a total of $3,424.01 when his total monthly deductions should be no more than $1,816 ($514 for federal taxes, $596.00 for state taxes, $552 for FICA, and $154 for Medicare). The Former Husband receives a substantial deduction in his taxes for his alimony payment. The Former Husband is manipulating his taxes to avoid payment of support obligations .... Without imputing the $2,200 in income for unpaid rental expenses to the Former Husband, the Former Hus *467 band has available income to him of $5,383 after the payment of his alimony obligation. Including the imputed rental income of $2,200 per month for which the Former Husband pays no taxes, the Former Husband has available income to him of $7,583 after the payment of his alimony obligation.
(Emphasis added.)[2] The court then arrived at its own tax liability calculations but, unfortunately, it did not explain how it reached those numbers. Although it is likely that the trial court adopted certain figures set forth in a worksheet filed by the former wife as part of her closing argument, that worksheet by itself is not competent, substantial evidence. We have also been unable to independently corroborate record evidence supporting the trial court’s finding that the former husband’s “total monthly deductions should be no more than $1,816 ($514 for federal taxes, $596.00 for state taxes, $552 for FICA, and $154 for Medicare).”
A trial court’s determination of a party’s net income must be supported by competent, substantial evidence. McCants v. McCants, 984 So.2d 678, 682 (Fla. 2d DCA 2008). In a case such as this one involving a significant dispute about one of the party’s income, “meaningful appellate review is hampered by the absence of findings as to how the trial court determined the income amount.” Id. Generally, this is the pivotal building block from which all other economic issues flow.
A trial court should determine a party’s net income by subtracting statutorily allowable deductions, such as tax deductions, from the party’s monthly income. Chaney v. Fife, 18 So.3d 44, 45 (Fla. 1st DCA 2009). Lack of competent, substantial evidence supporting the numbers the court used for a party’s tax liability warrants reversal. Id. (reversing income calculation in child support case because there was no competent, substantial evidence to support the number used for each party’s federal tax liability). Because there is no competent, substantial evidence supporting the tax liability numbers attributed by the trial court to the former husband, we must remand for the trial court to reconsider this issue and include that information in the final judgment.
II. The Trial Court’s Imputation of Income to the Former Husband
The former husband also complains about the trial court’s imputation of income to him. We find no error in the trial court’s decision to impute income to the former husband because he was living rent-free in a house owned by his parents. But, for the reasons explained below, the trial court erred in how it applied that imputation of income to the facts of this case.
Imputation of income to a spouse for purposes of determining support is appropriate when someone, such as an employer or parent, is paying or subsidizing some of that spouse’s monthly living expenses. See, e.g., Posner v. Posner, 39 So.3d 411, 413-14 (Fla. 4th DCA 2010) (affirming trial court’s decision to impute $1400 income to the father based on the rental value of the home owned by the parents, where they allowed him to live rent-free); Chapoteau v. Chapoteau, 659 So.2d 1381,1384 (Fla. 3d DCA 1995) (holding that husband’s employer-provided residence was income). In this case, the former husband’s financial affidavit listed his monthly salary as $10,649, and claimed a monthly deficit of $2529 after deducting all monthly expenses. One of those expenses was monthly rent of $2200. Yet, at the *468 final hearing on dissolution held on April 7, 2010, the former husband testified that he was living in a home owned by his parents. While he claimed he had agreed to pay his parents $2200 monthly in rent, as of the date of the hearing he had only made two payments of $1800 to them. And at the hearing held on December 10, 2010, the former husband testified that he had not paid his parents any rent in quite some time, instead, giving them “IOUs.” Clearly, the trial court rejected the former husband’s testimony regarding his rent expense, and such credibility determinations are within its discretion. See, e.g., Posner, 39 So.3d at 413-14 (imputing $1400 in income to the husband when both parents had been allowing him to live rent-free in a house owned by them, even though the parents testified that they did not intend their assistance to continue and that they intended to sell the house). Therefore, we find no error in the trial court’s decision to reject the former husband’s testimony and, in turn, impute $2200 in monthly income to him.[3]
However, the trial court erred in how it applied that imputation of income. As a result, it reached an incorrect conclusion about the amount of income actually available to the former husband to pay the former wife’s fees. The trial court found that the former husband’s gross monthly income was $10,649. It then deducted $1816 for taxes and $3300 for alimony payments to the former wife and concluded that his available income was $5383. At that point, the court added $2200 to his monthly income and concluded that his available monthly income was $7583, as if the former husband were actually receiving a monthly $2200 payment from his parents for rent in addition to his salary. As the undisputed testimony showed, the former husband is not actually receiving any additional money from his parents on top of his net pay—he simply does not have a rent expense.
“[I]n determining the parties’ income levels ... the court may consider ‘[Reimbursed expenses or in kind payments to the extent that they reduce living expenses.’” Garcia v. Garcia, 560 So.2d 403, 404 (Fla. 3d DCA 1990) (emphasis added) (quoting § 61.30(2)(a), Fla. Stat.). Housing or housing payments are included in the determination of gross income, not net income. See, e.g., Thomas v. Thomas, 712 So.2d 822, 823-24 (Fla. 2d DCA 1998) (noting that wife’s living expenses were reduced because she was allowed to live in marital home rent-free); Jones v. Jones, 679 So.2d 1270, 1271 (Fla. 2d DCA 1996) (holding that trial court erred in including imputed income into its computation of the husband’s net income). We agree that the overall effect of the former husband’s receipt of free rent from his parents is to increase the monthly income available to pay the former wife’s fee award. But it was error for the trial court to then also add an imaginary $2200 to the former husband’s net income after apparently reducing his expenses by the rejected rent amount. This methodology effectively double counted the same $2200.
Because on remand the trial court will have to recalculate the former husband’s net income available to pay the former wife’s fee award, we offer some additional observations to aid the court in its calculation of the amount the former husband must pay the former wife month *469 ly. As previously discussed, a court determines a party’s net income by subtracting statutorily required deductions, such as federal tax deductions, from the party’s monthly income. See Chaney, 18 So.3d at 45. The trial court should explain how it determined the amount of those deductions. The trial court is also required to exclude from the former husband’s gross income the amount of alimony he is required to pay, see, e.g., Silver v. Silver, 898 So.2d 145, 146 (Fla. 4th DCA 2005), which in this case is $8300. And the trial court is also required to consider the former husband’s own reasonable and necessary living expenses. See generally Nadrich v. Nadrich, 936 So.2d 15, 18 (Fla. 4th DCA 2006). It is clear from the record that at least one living expense listed in the former husband’s financial affidavit — $2200 in rent — was inaccurate. Other than the dispute over tax deductions and rent expense, the parties did not appear to dispute the other listed expenses and deductions which the former husband claimed from his gross income.[4] On remand, the trial court must consider whether the former husband has the ability to pay $3300 in monthly alimony to the former wife, his tax obligations, all of his other reasonable and necessary financial obligations, and also pay the former wife $3200 monthly toward her attorney’s fees and costs. See generally id. Nothing in this opinion should be interpreted to preclude the trial court from again imposing a $3200 monthly payment toward the former wife’s attorney’s fees and costs, as long as it provides competent, substantial evidence in the record supporting its conclusion that the former husband has the ability to pay that monthly amount. In all other aspects, we affirm.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
CASANUEVA and CRENSHAW, JJ., Concur.

. We do not disturb the trial court's findings regarding the former husband’s recalcitrant behavior during the dissolution proceedings, all of which contributed to a disproportionately large attorney fee award in view of the limited assets involved.

. We note with interest that the former husband's financial affidavit stated that he had a monthly deficit of $2529 after paying all his monthly living expenses. Removing the nonexistent $2200 monthly rent expense almost entirely eliminates the former husband’s claimed income deficit.

. The former husband lives in Georgia; thus the reference to state income taxes.

. The trial court did indicate that the former husband's new wife should share in the financial expenses of the former husband’s new household. The court also found that the former husband had discharged some of his debts in bankruptcy and had put some of his debt into a bankruptcy five-year payment plan, freeing up some income which was available to pay the former wife's fees. We do not disturb those conclusions.