Damoorgian, J.
In these consolidated appeals, Marybeth Newman (“Former Wife”) and Jon Newman (“Former Husband”) each challenge aspects of the final judgment dissolving *643 the parties’ seventeen-year marriage (case no. 14-4842) and Former Husband challenges the court’s entry of separate money judgments for sums awarded in the final judgment of dissolution (cases no. 16-0792 and 16-1342). We find merit in Former Wife’s challenge to the court’s alimony determination as reflected in the final judgment of dissolution, and reverse-and remand for further proceedings. Finding no merit in the remaining arguments raised by the parties, we affirm the remainder of the final judgment of dissolution and ensuing money judgments without further comment,
The parties were married in 1995 and Former Wife filed her petition for dissolution of the marriage in August of 2012. During the course of the marriage, Former Husband operated several marine related family businesses and Former Wife was a stay-at-home mother. The parties enjoyed a comfortable middle-class lifestyle throughout the marriage, acquiring a house in a nice neighborhood and a 41’ custom-built boat with little debt. In her petition, Former Wife asked for temporary and permanent periodic alimony as well as child support for the parties’ minor , children.
From the inception of the dissolution proceedings, Former Husband was' less than cooperative in providing Former Wife with adequate discovery regarding the value of his business interests and income. This was especially true as it pertained to a boat-chartering business run by Former Husband, Dykoke Enterprises, Inc. In each of his financial affidavits, Former Husband claimed that he earned no income from the charter business and did not -assign a value to his- interest in the business. Despite Former Wife’s multiple requests for production as well as the trial court’s order compelling Former Husband to produce the requested records, Former Husband failed to produce invoices or adequate bank records relating to his charter business.
The case proceeded to trial wherein Former Wife testified that after filing for dissolution, she began working as a housekeeper and earned approximately $20,000 a year. Former Wife testified that' after factoring in the cash Former Husband earned from his charter business; Former Husband actually earned more than double what he was reporting in his tax returns and financial affidavits. She testified that over the last four years, Former Husband chartered an average of four trips a week and charged upwards of $1,000 per trip. Based on Former Husband’s representa-1 tions to her during their marriage, Former Wife believed Former Husband earned about $70,000 a year cash operating his charter business. She admitted that she did not have proof of this, but explained that it was because Former Husband, refused to provide her with the business and financial records she requested.
■ Former Husband’s forensic accountant, on the other hand, testified'that the only asset of Dykoke Enterprises, Inc. as of the date of Former Wife’s petition was a bank account containing $99. Although the -accountant was not provided with any tax returns for the company, he opined that Former-Husband did not earn any income from Dykoke Enterprises, Inc. and testified that Former Husband’s average annual income was around $66,660.- Former Husband testified that his charter business did not generate any revenue past the carrying costs for the boat. This was despite the fact that he admitted to having clients such as the Discovery Channel, National Geographic, the BBC, and the University of Miami who he charged $1,500 - $3,000 a day. :
Considering the evidence, the court denied Former Wife’s request for permanent *644 periodic alimony. Although the court found that Former Wife had a need for alimony, it also found, after making a balancing payment and paying child support, Former Husband would not have enough liquidity or leftover income to pay alimony. The trial court found that Former Husband’s net monthly income for purposes of determining his ability to pay alimony was $4,325. In arriving at this figure, the court did not consider any income from Former Husband’s charter business, explaining that there was “insufficient proof’ of the amount. This was despite its findings that Former Husband’s testimony was “incredulous” and that the lack of proof was because “[Former] Husband did not provide in discovery the invoices or all of the bank statements necessary to determine the actual earnings of his charter boat business.” We hold that the court’s ability to pay determination was error.
Section 61.08, Florida’s alimony statute, provides that when determining the proper type and amount of alimony, the court must consider “[a]ll sources of income available to either party.” § 61.08(2)(i), Fla. Stat. (2012). The court must do the same when making a need and ability to pay determination. Mills v. Mills, 62 So.3d 672, 675-76 (Fla. 2d DCA 2011) (reversing and remanding an alimony determination because “the trial court did not include the value of the former husband’s business income or the value of in kind payments made on his behalf when it determined the former husband’s ability to pa/’); Smith v. Smith, 575 So.2d 228, 229 (Fla. 2d DCA 1991) (trial court erred when making its ability to pay determination by not considering all sources of income available to husband).
Section 61.046 broadly defines “income” as follows:
[A]ny form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker’s compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government. United States Department of Veterans Affairs disability benefits and reemployment assistance or unemployment compensation, as defined in chapter 443, are excluded from this definition of income except for purposes of establishing an amount of support.
§ 61.046(8), Fla. Stat. (2012).
“Florida case law has long recognized that self-employed spouses, in contrast to salaried employees, have the ability to control and regulate their income. Their testimony, tax returns, and business records accordingly may not reflect their true earnings, earning capability, and net worth.” Ugarte v. Ugarte, 608 So.2d 838, 840 (Fla. 3d DCA 1992). Thus, when the circumstances suggest that a self-employed spouse has not accurately reported his or her income, the court may properly assign a higher income value than that claimed by the spouse. See Child v. Child, 34 So.3d 159, 161 (Fla. 3d DCA 2010). This is especially true when the spouse fails to comply with discovery orders and does not disclose all pertinent financial information. See Nadrich v. Nadrich, 936 So.2d 15, 18 (Fla. 4th DCA 2006) (“Under the circumstances and in light of the husband’s failure to-'comply with many discovery orders to disclose his financial information, the court had no choice but to impute some amount of income to the husband beyond what his pay stubs showed.”).
Here, it was apparent from the record that Former Husband was earning some income from his charter business. Indeed, *645 the trial court found that Former Husband’s claim to the contrary was “incredulous.” Although the actual amount of income earned was not established at trial, this was because of Former Husband’s wrongful conduct in failing to comply with Former Wife’s discovery requests and the court’s ensuing orders. Under these circumstances, it was error for the trial court not to consider Former Husband’s charter business income when making its alimony determination. Therefore, the case is reversed and remanded for a rede-termination by the trial court of Former Husband’s ability to pay alimony. Upon remand, the court should enforce its prior discovery orders. In the event Former Husband refuses to comply, the court should assign a value to his charter business income as equity requires.

Affirmed in part, reversed in part, and remanded.

Gerber and Forst, JJ., concur.