652 S.E.2d 427

**Anita BLACKWELL, Appellant,**

v.

**Kasper F. FULGUM, Jr., Respondent.**

**No. 4301.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2007.

Decided Oct. 9, 2007.

338

Robert Scott Dover, of Pickens, for Appellant.

Kenneth C. Porter, of Greenville, for Respondent.

SHORT, J.:

Anita Blackwell appeals the family court's decision to award Kasper Fulgum, Jr. $9,411.00 in past due child support and

$3,368.00 in attorney's fees. We affirm.[1]

## FACTS

Anita Blackwell (Mother) and Kasper Fulgum, Jr. (Father) were formerly husband and wife, and during their marriage, they had two children. The two children (Daughter and Son) were born on April 8, 1985 and November 14, 1986, respectively. In a February 28, 2001 order (the Original Support Order), the family court awarded, by agreement of the parties, custody to Father and ordered Mother to pay Father $760.00 per month for child support.

Mother paid the required child support until June 15, 2003, whereupon she then reduced her child support payment to $386.00 per month. Mother believed she was justified in reducing her child support by one-half because Daughter had reached eighteen years of age and graduated from high school at the end of May.[2] Father immediately responded by sending a letter to Mother indicating that she was in default of the child support order, and informing her that she needed to submit current financial information to either his attorney, her attorney, or the Greenville County Family Court to seek a reduction in child support. After receiving no response from Mother, Father had his attorney send Mother a second letter. This letter again informed Mother that it was not proper for her to reduce the child support without a court order and offered to work with Mother on establishing a proper reduction in child support. Mother's current husband responded with a letter informing Father any order amending the Original Support Order must reflect a $386.00 per month child support obligation on the part of Mother or else Father would have to send his financial information to Mother.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. It appears Mother was mistakenly paying $772.00 per month in support and not the required $760.00 per month. Therefore, $386.00 per month represents a one-half reduction in support. This is likely due to the fact that the Original Support Order dictated that Mother pay $772.00 per month from August of 2001 through November of 2001 and then pay $760.00 per month thereafter. The parties agree Mother overpaid father in the amount of $180.00.

Mother continued paying $386.00 (or the corrected $380.00) per month to Father until March 15, 2005. However, beginning in September 2004 and continuing through January 2005, Mother ceased making support payments to Father and paid directly to Son because she believed Son was no longer living with Father. Mother ceased payments to Father again in April 2005 because she again believed Son was living elsewhere.

In January 2005, Father filed a rule to show cause motion, and the family court, on January 24, 2005, issued an order for Mother to appear on February 11, 2005 to show cause why she should not be held in contempt. This order specifically and separate from the issue of contempt additionally ordered Mother to show cause why she should not pay a reasonable amount of attorney's fees and costs. Mother failed to appear at the rule to show cause hearing, and Father was awarded $14,668.00 in child support and $865.00 for attorney's fees and costs. Mother was held in contempt and sentenced to one year incarceration which could be purged upon payment of the child support and attorney's fees. On April 18, 2005, the family court vacated this contempt order in response to Mother's motions to alter and amend and for relief from the judgment. The family court found Mother's notice of the proceedings was defective and ordered a new trial *de novo* on the rule to show cause action.

As a result of the second proceeding concerning Father's rule to show cause motion, the family court did not find Mother in contempt, but did order her to pay $9,411.00 in child support and $3,368.60 for Father's attorney's fees. The family court found that Mother was not entitled to unilaterally reduce her child support payments by one-half and was responsible for the full amount of support until March 11, 2005, which was the date she filed her motion for temporary relief seeking a reduction in her support obligation due to a substantial change in circumstances. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence." *Abercrombie v. Aber-*

*crombie,* 372 S.C. 643, 646, 643 S.E.2d 697, 698 (Ct.App.2007). Despite this broad scope of review, we remain mindful that the family court saw and heard the witnesses and generally is in a better position to determine credibility. *Id.*

## LAW/ANALYSIS

### I. Child Support Arrearage

It appears Mother contends because the family court failed to find her in contempt, it was error to enforce the Original Support Order against her. Because Mother failed to separate her arguments into individual issues on appeal, it is somewhat unclear exactly which arguments she has put forth. However, we will endeavor to address each issue raised.

We first note section 20–7–420(17) of the South Carolina Code (Supp.2006) provides the family court with jurisdiction to continue orders for support until the eighteenth birthday of the supported child. At which point, under South Carolina law, a parent's obligation to pay child support generally ends by operation of law. *Purdy v. Purdy,* 353 S.C. 400, 403, 578 S.E.2d 30, 31 (Ct.App.2003). However, the above statute further provides a means for the family court to extend support beyond the child's eighteenth birthday if the child is still in high school "and is making satisfactory progress toward completion of high school, not to exceed the nineteenth birthday unless exceptional circumstances are found to exist or unless there is a preexisting agreement or order to provide for child support past the age of eighteen years...." S.C.Code § 20–7–420(17) (Supp.2006). The statute continues on to provide the court with authority to extend support beyond the child's eighteenth birthday if there are physical or mental disabilities of the child or upon a showing of other exceptional circumstances.

In light of the above statute, it would appear at first blush that the now appealed from family court order erred in requiring Mother to pay the full amount of support as noted in the Original Support Order until Daughter was almost twenty years of age.[3] However, where one of multiple children

---

3. The appealed from order requires Mother to pay the full $760.00 per month in child support until March 11, 2005 and then one-half of that

reaches majority, a parent's child support obligation will not be affected absent a family court order modifying the amount of support owed. *Bull v. Smith*, 299 S.C. 123, 126, 382 S.E.2d 905, 907 (1989). *See also Stroman v. Williams*, 291 S.C. 376, 380, 353 S.E.2d 704, 706 (Ct.App.1987) (holding that "[w]here a support order 'provides for payments for the benefit of two or more children, the marriage or emancipation of one minor child does not automatically affect the liability of the father for the full sum prescribed in the order.' "). Where one of multiple children becomes emancipated, the family court does not extend the parent's support obligation on behalf of the emancipated child. The court simply continues the existing support agreement for the benefit of the other minor child[ren] until such time as the court, upon request of the supporting parent, can calculate a proper reduction in the support obligation based on a showing of changed circumstances.

■■ When a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the court's discretion. *Browning v. Browning*, 366 S.C. 255, 263, 621 S.E.2d 389, 392–93 (Ct.App.2005). Perhaps in its discretion, the family court found that mother had a good faith belief that she was entitled to a reduction based upon the emancipation of Daughter, and therefore, decided against finding her in contempt. Regardless of the contempt, Mother owed Father support under the unmodified terms of the Original Support Order. We find no error by the family court in failing to find Mother in contempt and ordering her to pay the child support arrearage.

■ Mother next appears to raise an estoppel argument. Mother claims Father should not be permitted to collect the child support arrearage because she was prejudiced by Father's eighteen month delay in filing his rule to show cause action. Mother claims she was prevented from seeking a modification because it was not until Father filed his motion to show cause that she was put on notice that he was refusing to accept her one-half child support payments. We find this argument unpersuasive and untenable. We first note that

through Son's June 2005 graduation. On March 11, 2005, Daughter would have attained the age of nineteen years and eleven months.

Mother was free to petition the court for a change in her support obligation at any time, but she instead opted to unilaterally reduce her support payments in violation of the family court order. Further, in both a letter from Father and a letter from Father's attorney, Mother was informed that her actions were in violation of the family court order and the means by which she could remedy this problem. In light of these facts, we find any argument made by Mother based on estoppel or unconscionability to be without merit.

■■■■ Mother next argues the family court erred in its award of child support arrearage because it failed to credit her for the support she paid directly to Son. The Original Support Order stated: "The Mother shall make semi-monthly child support payments to the Father in the amount of $380.00." The general rule is that it is the obligation of the divorced spouse to pay the specified amounts according to the terms of the decree and said spouse should not be permitted to vary these terms as a matter of convenience. *Foster v. Foster*, 294 S.C. 373, 375, 364 S.E.2d 753, 754 (Ct.App.1988). The family court correctly noted "[t]he Mother was required to send the support to the custodian parent regardless of where the child was residing unless an order was entered, either by consent or otherwise." We find no error in the family court's failure to credit Mother for payments made directly to Son.

■■■■ Lastly, Mother contends equity and fairness dictates we hold the child support arrearage in abeyance pursuant to section 20–7–933 of the South Carolina Code (Supp.2006). She goes on to suggest the legislative intent of this abeyance provision is for conditions such as those encountered in this case. We disagree. Mother requests that this court hold her support arrearage in abeyance permanently; however, the very definition of "abeyance" is that of "temporary inactivity" or "suspension." *Black's Law Dictionary* 4 (7th ed.1999). Further, we are not persuaded by Mother's assertion that the legislature's intent in enacting the abeyance provision of the statute was to protect parents who unilaterally reduce their support payments in violation of a family court order. We deduce no support for holding the arrearage in abeyance.

## II. Attorney's Fees

█ Mother contends the family court erred in awarding Father attorney's fees and in failing to award attorney's fees to her. We disagree.

█ "Suit money, including attorney's fees, may be assessed for or against a party to an action brought in or subject to the jurisdiction of the family court." S.C.Code Ann. § 20–7–420(A)(38) (Supp.2006). An attorney's fees award is within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Davis v. Davis*, 372 S.C. 64, 88, 641 S.E.2d 446, 458 (Ct.App.2006).

█ Generally, we would be inclined to determine an award of attorney's fees in accordance with the factors outlined in the case of *E.D.M. v. T.A.M.*.[4] However, if the case before us presents an added dimension of an uncooperative spouse who hampers a final resolution of the issues in dispute, we will not reward an adversary spouse for such conduct. *Anderson v. Tolbert*, 322 S.C. 543, 549, 473 S.E.2d 456, 459 (Ct.App.1996). Of particular concern are those occasions which force one parent to seek sanctions against the other parent for violating court orders. *Id.* at 550, 473 S.E.2d at 459.

In the instant case, it was Mother's conduct in unilaterally reducing her child support obligation which violated the court order and precipitated Father's rule to show cause motion. Mother's refusal to cooperate with Father's offer to negotiate a proper reduction in child support necessitated the filing of his motion and ultimately, Mother's need to hire an attorney. Further, the initial ruling on the rule to show cause motion was vacated because the family court found Mother's notice of the proceedings was defective, not because of any misstatements by Father. Therefore, contrary to Mother's assertions that Father's misstatements prolonged the case, even had Father not misspoken during the initial hearing, a second hearing would have been required. Because the family court

---

4. In determining whether to award attorney's fees, the family court should consider each party's ability to pay his or her own fees, the beneficial results obtained, the parties' respective financial conditions, and the effect of the fee on the parties' standards of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

vacated the initial order and ordered a new trial *de novo,* the misstatements by Father had no bearing upon the second hearing. The court would have been required to address any discrepancies between Father and Mother's accounts of the support arrearage to determine the amount owed regardless of any misstatements made by Father in the first hearing.

Lastly, we note that since the initial order regarding the rule to show cause was vacated, Mother did not, as she contends, receive a reduction in child support arrears from $14,668.00 to $9,411.00. This second hearing, which was a new trial *de novo,* resulted in her having to pay $9,411.00 in child support arrearage. We fail to discern a manner in which she could entitle this a beneficial result. We find no error with the family court's finding that "Mother required the bringing of this action and her actions weighed heavily in the attorney's fees award."

### III. Time Allotted to Pay Support Arrearage and Attorney's Fees

Mother contends the family court erred in requiring her to pay the child support arrearage on or before March 1, 2006 and the attorney's fees on or before January 15, 2006. She contends this amount of time was improper and constituted an abuse of discretion. We disagree.

"Questions concerning child support are ordinarily committed to the discretion of the family court, whose conclusions will not be disturbed on appeal absent a showing of an abuse of discretion." *South Carolina Dept. of Social Services, County of Siskiyou v. Martin,* 371 S.C. 21, 24, 637 S.E.2d 310, 312 (2006). With the record before us, we cannot find an abuse of discretion on the part of the family court. The family court was in a position superior to this court from which to evaluate the appropriate time frame allotted for payment and was free to impute income to Mother who was voluntarily unemployed. *See Patel v. Patel,* 359 S.C. 515, 532, 599 S.E.2d 114, 123 (2004) ("It is proper to impute income to a party who is voluntarily unemployed or underemployed.").

### CONCLUSION

We find the family court did not err in its award of child support arrearage and attorney's fees and that the time

348

allotted for payment was not an abuse of discretion. Based on the foregoing, the family court's order is

**AFFIRMED.**

STILWELL, J., and WILLIAMS, J., concur.