Sharon PRISCO, Appellant/Cross–
Appellee,

v.

Richard STROUP, Appellee/Cross–
Appellant.

Nos. 09–FM–1159, 09–FM–1401.

District of Columbia Court of Appeals.

Argued May 18, 2010.
Decided Sept. 2, 2010.

Sharon Prisco, pro se.

Margaret J. McKinney, with whom Kristin Henrikson, Bethesda, MD, Wendy H. Schwartz and Shannon M. Roddy, Washington, DC, were on the brief, for appellee.

Before REID and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

KRAMER, Associate Judge:

This case has been here before.[1] The controversy central to the previous case—namely, Ms. Prisco's request to compel increased child support from Mr. Stroup—underlies this appeal as well. In this round of litigation, Ms. Prisco appeals the trial judge's order partially granting her motion to recalculate the amount of child support for 2006 and 2007. Specifically, Ms. Prisco objects to the application of the Virginia child support guidelines to determine the new child support amount, the imputation of income to her while she was unemployed, and the elimination of all arrearages owed by Mr. Stroup in light of additional payments he has been making towards the children's expenses. In addition, both parties appeal the judge's decision to deny attorney's fees to either side.

We discern no error in the application of Virginia child support guidelines. At the same time, we hold that the trial judge was plainly wrong when she imputed income to Ms. Prisco for the time period in which she was unemployed. In addition, it was clear error to allow Mr. Stroup's arrearages to be offset by the additional payments he made beyond his obligations under the parties' agreement. Therefore, we remand for a recalculation with no income imputed for Ms. Prisco and no offset for any extra payments made by Mr. Stroup. Finally, because the parties' agreement explicitly provided for attorney's fees to the prevailing party, the trial court should, on remand, determine which party prevailed under Virginia law and award fees accordingly. We affirm the order as to all other issues raised on appeal.

## I. Background

Our previous opinion contains a detailed background of the controversy up to 2006.[2] Briefly, the parties divorced in Virginia in 2000. They memorialized the divorce in a Property and Support Settlement Agreement ("Agreement") which was incorporated, but not merged, into the Virginia court's order. In 2004, Ms. Prisco registered the Virginia order in the Superior Court after Mr. Stroup moved to the District. At the same time, she asked the court to modify the amount of child support pursuant to D.C.Code § 46–204(a) (2001) because, she alleged, there had been a substantial and material change in the parties' circumstances. The trial court denied the motion, and we affirmed.[3]

In this instance, instead of asking for a modification of the order under the D.C.Code, Ms. Prisco requested the court to recalculate the child support amount

---

1. *Prisco v. Stroup,* 947 A.2d 455 (D.C.2008).

2. *Id.* at 457–58.

3. *Id.* at 460–61.

pursuant to the Agreement.[4] The trial court agreed that the Agreement provided for such a recalculation. The court, however, applied the Virginia guidelines[5] to recalculate the child support amount for the years 2006 and 2007, rather than the District of Columbia child support guidelines,[6] because the Agreement provided that it "shall be construed under and governed by the laws of the Commonwealth of Virginia."

In recalculating the child support amount, the trial judge imputed income to Ms. Prisco for the time period during which she was unemployed because she found Ms. Prisco's job search "was not commensurate with a sincere desire for employment." The judge focused on the fact that Ms. Prisco was unwilling to consider positions that required her to commute long distances or travel, and her failure to "effectively market herself" or to "effectively network." Particularly, the court found that Ms. Prisco's job application letters were "lackluster" and that the number of interviews she secured was "mediocre." The court also emphasized the fact that Ms. Prisco declined a job offer because it required her to travel to Europe. The court concluded that there was "no viable reason ... that she could not travel ... except personal choice." To

the court, this reflected "the insincerity of her efforts to find employment." Finally, the trial court found a lack of diligence in Ms. Prisco's failure to contact a law firm that Mr. Stroup had referred her to, as well as her failure to conduct a broader job search that included teaching or "of counsel" positions.

Based on these findings, the court recalculated child support using an imputed income of $100,000 for Ms. Prisco and approximately $1,400,000 for Mr. Stroup. Even though the result was an increased amount of child support attributable to Mr. Stroup, the court subtracted the additional payments Mr. Stroup had made towards the children's expenses from the arrearages owed by him. The court found that Mr. Stroup's payments toward the children's expenses "far exceed[ed] any amount that this Court would require that he pay."[7] Finally, the court declined to award either side attorney's fees, even though the Agreement explicitly provided for such an award to the "prevailing party."

## II. Standards of Review

▮▮ Because Ms. Prisco has moved to recalculate child support under the Agreement, which has a choice of law clause, we will apply Virginia law.[8] Virginia law

4. The Agreement explicitly provides that the parties "shall annually exchange income information ... no later than May 1 of each year" and "shall recalculate child support at that time."

5. VA. CODE ANN. § 20–108.1 (2009).

6. D.C. Code § 16–916.01 (2001).

7. The court calculated arrearages of approximately $20,000 for 2006 and an additional $20,000 for 2007. But it also found that Mr. Stroup had paid approximately $200,000 above the amount that he was obligated to pay. Thus, it found that the extra payments more than satisfied the arrearage amount.

8. Ms. Prisco contends that the trial court erred in concluding that the Agreement's choice of law clause mandated the use of Virginia guidelines in the recalculation. She argues that the parties intended "that the child support laws of the appropriate jurisdiction apply" because the Agreement does not explicitly mention the Virginia guidelines. Thus, she claims, the trial court should have applied the District's child support guidelines. We disagree. The plain language of the Agreement contains no exception such as the one she urges. Rather it confirms that Virginia law shall apply, regardless of whether "one or more of the parties now is, or may become, a resident of a different state." Virginia guidelines are indisputably Virginia law,

vests "discretion in the trial court in awarding child support and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence." [9] Moreover, on appeal, Virginia courts "view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party below." [10] Finally, an award or denial of attorney's fees is a matter committed to the sound discretion of the trial court. [11]

## III. Legal Analysis

### A. Imputation of Income

■ This is not a case where a parent has made no effort to obtain employment. [12] Nor is it a case of voluntary unemployment. [13] The trial court found that Ms. Prisco had been terminated from her job as a patent attorney in February 2006, through no fault of her own. When one parent seeks to impute income to another who has involuntarily lost her job, "[t]he burden is on the party seeking the imputa-

tion to prove that the other parent was voluntarily foregoing more gainful employment . . . by showing that more lucrative work was currently available." [14] But the party seeking a modification of child support bears the burden of "prov[ing], by a preponderance of the evidence a material change in circumstances justifying the modification of the support requirement." [15]

■ In *Hatloy v. Hatloy*, the Virginia Court of Appeals interpreted these two standards to mean that the party moving for a modification of the child support bears the burden of proving that she was not voluntarily unemployed. [16] Nevertheless, the court found no error in the trial court's decision to adopt the moving party's testimony regarding the adequacy of their job search. [17] Furthermore, the court put the burden of projecting a putative income amount on the party arguing for imputation. [18] Therefore, while Ms. Prisco

VA.CODE ANN. § 20-108.1-2, and nothing in the contract language supports a conclusion that the parties intended to carve out an exception when recalculating the amount of child support. *See Spencer v. Spencer*, 494 A.2d 1279, 1286 (D.C.1985) ("The court must view the provisions of the agreement consistently with . . . all other provisions of the contract.").

9. *Young v. Young*, 3 Va.App. 80, 81, 348 S.E.2d 46, 47 (1986).

10. *Reece v. Reece*, 22 Va.App. 368, 372, 470 S.E.2d 148, 151 (1996).

11. *E.g., Alphin v. Alphin*, 15 Va.App. 395, 406, 424 S.E.2d 572, 578 (1992).

12. *E.g., Hur v. Dep't of Social Servs.*, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991) (father continued to attend college until age twenty-four after conceiving child at age nineteen).

13. *Hamel v. Hamel*, 18 Va.App. 10, 13, 441 S.E.2d 221, 223 (1994) (wife quit her job voluntarily to take care of her children); *Bro-*

*dy v. Brody*, 16 Va.App. 647, 649, 432 S.E.2d 20, 21 (1993) (same).

14. *Niemiec v. Dep't of Soc. Servs.*, 27 Va.App. 446, 451, 499 S.E.2d 576, 579 (1998) (internal citations omitted); *see Reece, supra* note 10, 22 Va.App. at 376, 470 S.E.2d at 152 (distinguishing between involuntary and voluntary job loss with respect to each party's burden of proof).

15. *Antonelli v. Antonelli*, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991).

16. 41 Va.App. 667, 672 n. 3, 588 S.E.2d 389, 391 n. 3 (2003) ("Although the word, 'imputation,' is used in this context, the burden of proof remains on [the moving party], not on [the party] who is arguing for imputation, unlike cases asking for imputed income at the time of the initial award.").

17. *Id.* at 673–74, 588 S.E.2d at 392.

18. *Bennett v. Dep't of Soc. Servs.*, 22 Va.App. 684, 693, 472 S.E.2d 668, 672–73 (1996) ("[t]he party contending that income must be

had the burden of showing that her unemployment was not voluntary, Mr. Stroup was required to refute her evidence regarding her job search. Finally, under Virginia law, a court should consider, in determining whether and how much income to impute to a parent, that parent's "earning capacity and financial resources, education and training, and the ability and opportunity to secure such education and training [ ], as well as such other factors as are necessary to the equities for the parents and children." [19]

Ms. Prisco established that, between February 2006 and March 2008, she submitted over one hundred job applications and secured eight job interviews. She produced full documentation of her job search, including copies of the applications that she sent and rejection letters that she received. She also contacted eleven recruiting firms that place attorneys into jobs across the country, including in the D.C. metropolitan area. In return, Mr. Stroup testified that, based on his personal experience as the partner of an intellectual property law firm, the demand for qualified attorneys with experience similar to Ms. Prisco's exceeded the available pool of such applicants.[20] As to the specific jobs available in the market, apart from listing a few law firms that had hired associates away from his own firm, Mr. Stroup did not name any firm with any job openings for a person with Ms. Prisco's education and training. Finally, though Mr. Stroup testified that his firm had failed to "find as many talented people that have the ability to practice intellectual property that we

have needs (*sic*) for," his testimony was undercut by his firm's rejection letter to Ms. Prisco, which stated that the firm was in fact "in the fortunate position of having received many outstanding applications and have thus had to make some very difficult choices."

We hold that, even when we view the evidence in the light most favorable to Mr. Stroup, the trial court was plainly wrong in imputing an income to Ms. Prisco. First, the court, after acknowledging that Mr. Stroup was not qualified to testify as an expert on the relevant job market, credited him as someone who has "extensive experience hiring attorneys for his firm." This holding is clearly erroneous in light of the fact that Mr. Stroup's concession that he did not have such experience and his admission that he had not been involved in his firm's hiring in any capacity since 2005. As a result, it was error for the court to adopt Mr. Stroup's statement that his firm's demand for talented attorneys was not being met. Furthermore, the court's conclusion is directly controverted by the firm's admission that they had actually received an excess of job applications. Second, in finding her job search inadequate, the court only credited Ms. Prisco's direct job applications, which numbered over one hundred. The court did not credit her testimony, which was not refuted by Mr. Stroup, that she contacted recruiting firms, which would have vastly expanded the number of firms to which Ms. Prisco applied. Third, the court

imputed is required to produce evidence that is sufficient to enable the trial judge reasonably to project what amount could be anticipated had the [other party] procured employment.") (internal quotations omitted).

**19.** *Brooks v. Rogers*, 18 Va.App. 585, 592, 445 S.E.2d 725, 729 (1994) (internal quotations omitted).

**20.** But, at the same time, he conceded that he was not on the hiring committee at his firm and that he had no experience in hiring attorneys.

found that Ms. Prisco had declined a job offer because it involved travel to Europe, but the record indicates otherwise. Instead, Ms. Prisco testified that the firm had informed her that "they could not understand how [she] could possibly fit within their organization because of the travel requirements." She then inquired if there were any other jobs she could perform, given that they did not think she could travel. The answer was no. Nothing in the record indicates that she turned down an offer or claimed that she could not travel. The record thus belies the trial court's finding that the failure of Ms. Prisco to take that job was a "personal choice." Fourth, the court erred in finding a lack of diligence in Ms. Prisco's failure to follow up with a contact from Mr. Stroup. The court found that Ms. Prisco did not follow up with a particular firm because it was in Virginia (at the time, she lived in Maryland). The record indicates that Ms. Prisco received a letter from Mr. Stroup, which contained a list of about twenty firms that were seeking attorneys. She followed up with almost all of them. That she failed to contact one out of the many potential contacts hardly supports a finding of bad faith. Finally, the trial court plainly erred when it found that Ms. Prisco's search was not "diverse and comprehensive" because she had not applied for any teaching positions, or positions of counsel. The record instead shows that Ms. Prisco applied for a great variety of positions, including, among others, high school science teacher, IT contact manager, legal editor, senior licensing manager, and Patent Agent. Based on the documentation that Ms. Prisco provided, which Mr. Stroup was not able to refute, it cannot be said that she limited her job search such that she was voluntarily unemployed.

Thus, the record plainly does not support the trial court's conclusion that Ms. Prisco's unemployed status was due to neglect or bad faith. In a similar case, the Virginia Court of Appeals held that a union member who sought, but could not secure, employment at a level commensurate with his old position during a strike, was not voluntarily underemployed.

> Mr. Rawlings was not "underemployed" during the pendency of this strike. Rather, the record shows that in addition to participating in union activities in order to receive strike pay, Mr. Rawlings also sought temporary employment appropriate to his skills and educational level *in order to* supplement his income and meet his support obligation.[21]

The record shows that Ms. Prisco conducted an extensive job search and nothing in the record suggests that she was not diligent in doing so. We therefore hold that the trial court plainly erred when it imputed to her an income of $100,000 for the years 2006 and 2007.

### B. *Calculation of Arrearages*

■ Virginia courts subscribe to the view that

> [I]t is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree and that he should not be permitted to vary these terms to suit his convenience.... To permit him to increase the amount of the specified payments at one time, reduce them at another, and require an adjustment of the differences in the future, would lead to continuous trouble and turmoil.[22]

■ To prevent such "trouble and turmoil," overpayments are considered to

---

**21.** *Rawlings v. Rawlings*, 20 Va.App. 663, 670–71, 460 S.E.2d 581, 584 (1995).

**22.** *Newton v. Newton*, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961).

be gratuities, and a spouse who wishes to account for them as "warrant[ing] a change in the terms of the decree" must "apply to the court for such relief." [23] Virginia courts are clear on this issue: "A spouse ordered to pay support must pay according to the terms of the decree and payments made in excess of the amount ordered are gifts or gratuities and cannot be credited to his obligation to pay the support award." [24] Therefore, it was error for the court to offset Mr. Stroup's arrearages by the amounts he paid beyond what the Agreement required.

### C. Attorney's Fees

 "[W]here … the trial court finds the wife needs and is entitled to maintenance and support and the husband has the financial ability to meet those needs, its failure to award counsel fees to her is, in our opinion, an abuse of … discretion." [25] The Virginia Court of Appeals has explained, however, that *Thomas* does not stand for an automatic award of attorney's fees "whenever a wife is granted support." [26] Instead, the trial court has the discretion to award or deny such fees "after considering the circumstances and equities of the entire case." [27] Part of the "circumstances" of this case concern the Agreement's explicit fee-shifting clause which awards attorney's fees to the "prevailing party." Ms. Prisco challenges the trial court's decision to not award fees to either party based on its finding that "neither party is the triumphant party." The trial court based its decision to deny both parties' requests for fees on its opinion that "this case … is the result of the inherent difficulties in the parties' interactions," and concluded that the law in Virginia and the District of Columbia "would in the ordinary course assign to each party [their own fees]." But the ordinary course is inapplicable when the parties have agreed to an explicit fee-shifting clause. Therefore, the trial court needed to determine what constitutes a "prevailing party" under Virginia law, upon which determination it should have based its decision on attorney's fees.[28] On remand, the court should consider the Virginia courts' definition of a "prevailing party" [29] and refer to that definition to decide the matter.[30]

23. *Id.*

24. *Sanford v. Sanford*, 19 Va.App. 241, 246–47, 450 S.E.2d 185, 189 (1994) (internal quotation marks and citations omitted).

25. *Thomas v. Thomas*, 217 Va. 502, 505, 229 S.E.2d 887, 890 (1976).

26. *Artis v. Artis*, 4 Va.App. 132, 138, 354 S.E.2d 812, 815 (1987).

27. *Id.*

28. *See Rutledge v. Rutledge*, 45 Va.App. 56, 65, 608 S.E.2d 504, 508 (2005) ("[T]he function of the court is to construe the contract made by the parties, not to make a contract for them.").

29. *E.g., West Square, L.L.C. v. Commun. Techs.*, 274 Va. 425, 435, 649 S.E.2d 698, 703 (2007).

30. We are not persuaded by Mr. Stroup's contention that he is entitled to fees because Ms. Prisco has misused the legal process by demanding attorney fees even though she has "lost" below. First, we have jurisdiction over "all final orders and judgments of the Superior Court of the District of Columbia." D.C.Code § 11–721(a)(1). Therefore, Ms. Stroup is entitled to appeal a decision for which she can put forth a good-faith argument for reversal. The fact that her previous application for a modification of child support was rejected does not necessarily indicate the lack of good faith, especially since the previous case was resolved on an entirely different legal basis. In addition, the Agreement expressly provides that child support amounts shall be recalculated every year, and, in the event that the matter is litigated, the prevailing party "shall be entitled" to reasonable attorney's fees and costs. The reason for the parties being before us again is not necessarily, as Mr. Stroup would have us believe, "Ms.

While we agree that the Virginia child support guidelines should apply, we conclude that, even under a stringent standard of review,[31] the remainder of the trial court's order must be reversed.

*Affirmed in part and reversed in part.*

---

Prisco's insatiable appetite for litigation and money." We see nothing in the record that suggests that Ms. Prisco is taking an action that is not allowed her by the Agreement. In other words, the parties made their bed when they entered into the Agreement and now they must lie in it. *See Rutledge, supra* note 28, 45 Va.App. at 66, 608 S.E.2d at 509 (no error where the court denied attorney's fees under the explicit terms of the parties' separation agreement).

**31.** See notes 9–11, *supra,* and associated text.