705 S.E.2d 65

**Robert A. SANDERSON, Appellant,**

v.

**Delia M. SANDERSON, Respondent.**

**No. 4771.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2010.

Decided Dec. 22, 2010.

250

Rebecca West, of Lexington, for Appellant.

James Wilson Tucker, Jr., of Rock Hill, for Respondent.

KONDUROS, J.

Robert Sanderson (Husband) appeals the family court's findings regarding Delia Sanderson's (Wife's) financial need and the imputing of income to him in the amount of $64,000. Husband also appeals the retroactive award of alimony and child support. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife married in 1984 in Wife's native country, Honduras. The parties had three children including their oldest son, Kyle, who was nineteen at the time of trial.[1] Husband began an adulterous relationship with a paramour, and the divorce was granted on that basis. The parties separated in July 2005 and Wife filed an action for divorce seeking child support, alimony, and custody of the parties' children.[2] Although he had moved out of the marital home, Husband continued to pay for Wife's and the children's household expenses. He did so until February 2006 when his position as Corporate Director of Quality with the Cooley Group was eliminated because of corporate downsizing. Husband continued paying the household expenses until April 1, 2006, using funds from his severance package. Husband then, by agreement of the parties, began paying $75 per week in child support using his unemployment benefits. When those benefits were exhausted, Husband stopped paying child support.

When Husband's employment was terminated, he was earning a gross income of $95,000, plus additional funds for teaching as an adjunct professor at area colleges. Wife earned approximately $33,000 per year in a clerical position.

At the time of trial, Husband was unemployed and living with his paramour. Husband testified he had looked for employment but could find nothing. He indicated he had applied for positions for which he was overqualified and was rejected based on the employer's belief that he would only work temporarily in such a position until a better job became available. According to the record, Husband brought to the family court a file containing copies of numerous letters he sent seeking employment.[3] Wife testified she believed Husband could find a job because he was from this country and

---

1. Kyle turned twenty in the interim between the two hearing dates.

2. In October 2005, Husband filed a complaint seeking to pay a reasonable amount of child support and requesting placement of the parties' children with Wife. The actions were eventually consolidated for trial.

3. Husband did not enter the letters into evidence at trial, and they are not included in the appellate record.

knew how to "manipulate the system." In determining the issues of alimony and child support, the family court concluded the parties enjoyed a comfortable standard of living during the marriage, and Wife required financial assistance from Husband to meet her necessary living expenses. The family court imputed income to Husband of $64,000 per year, noting he had earned at least that much in annual salary since 1994. Using that figure, the family court awarded alimony in the amount of $650 per month, retroactive to March 1, 2006, with payment of $25 bi-monthly applying toward the arrearage. The family court ordered child support in the amount of $168 per week in accordance with the guidelines and made the award retroactive to August 1, 2006, with payment of $15 per week going toward the arrearage. This appeal followed.

## STANDARD OF REVIEW

On appeal in family court matters, the appellate court's scope of review extends to the finding of facts based on its own view of the preponderance of the evidence. *Thomson v. Thomson,* 377 S.C. 613, 619, 661 S.E.2d 130, 133 (Ct.App. 2008). "Questions concerning alimony rest within the sound discretion of the family court judge whose conclusion will not be disturbed absent a showing of abuse of discretion." *Degenhart v. Burriss,* 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App. 2004). Questions concerning child support are likewise ordinarily committed to the discretion of the family court, whose conclusions will not be disturbed on appeal absent an abuse of discretion. *Blackwell v. Fulgum,* 375 S.C. 337, 347, 652 S.E.2d 427, 432 (Ct.App.2007).

## LAW/ANALYSIS

### I. Section 20–3–130[4] Factors

Husband maintains the family court erred in its conclusions as to several of the statutory factors to be considered in awarding alimony and child support. We will address each argument in turn.

---

4. S.C.Code Ann. § 20–3–130 (Supp.2009).

## A. Standard of Living

█ Husband argues the family court erred in concluding the parties enjoyed a comfortable standard of living. This issue is not preserved for our review.

█ Husband did not argue this point at trial, and his motion for reconsideration does not ask the family court to reconsider this finding. Husband's Rule 59(e), SCRCP, motion urges that Wife's living expenses as presented at trial were inflated. However, this point goes to the issue of Wife's financial need as opposed to the standard of living enjoyed by the parties during the marriage. A point not specifically raised to and ruled upon by the trial court will not be considered on appeal. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.,* 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (stating to be preserved for appellate review, issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity).

## B. Husband's Income

Husband argues the family court abused its discretion in imputing income to him of $64,000 per year. We agree.

██ Without question, the family court has the discretion to impute income to a party with respect to awards of alimony or child support.

> If the obligor spouse has the ability to earn more income than he is in fact earning, the court may impute income according to what he could earn by using his or her best efforts to gain employment equal to his capabilities, and an award of alimony based on such imputation may be a proper exercise of discretion even if it exhausts the obligor spouse's actual income.

*Dixon v. Dixon,* 334 S.C. 222, 240, 512 S.E.2d 539, 548 (Ct.App.1999); *see also Blackwell v. Fulgum,* 375 S.C. 337, 347, 652 S.E.2d 427, 432 (Ct.App.2007) (stating imputing income to a party who is voluntarily unemployed or underemployed is appropriate when determining child support obligations).

According to the South Carolina Child Support Guidelines (Guidelines), "[i]n order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community." S.C.Code Ann. Regs. 114–4720(A)(5)(B) (Supp.2009). A bad faith motivation is not required for a finding of voluntary underemployment. *Arnal v. Arnal*, 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006). "However, the motivation behind any purported reduction in income or earning capacity should be considered in determining whether a parent is voluntarily underemployed." *Spreeuw v. Barker*, 385 S.C. 45, 62, 682 S.E.2d 843, 851 (Ct.App.2009). When actual income versus earning capacity is at issue, courts should closely examine a good-faith and reasonable explanation for the decreased income. *Id.*

In this case, Wife does not dispute Husband lost his job through no fault of his own. Furthermore, Husband paid all the household expenses from the time of separation in July 2005 until the loss of his job on February 2, 2006. Husband continued to pay the household expenses for two more months, February and March, using funds from his severance package. Husband then, by agreement of the parties, began paying $75 per week in child support using his unemployment benefits. When those benefits were exhausted, Husband stopped paying child support. The record contains little evidence Husband's failure to be employed is motivated by bad faith.[5] However, a finding of bad faith is not required to establish a party is voluntarily underemployed or unemployed. Therefore, we will continue our analysis by examining the factors listed in the Guidelines to determine if the family court abused its discretion in imputing a $64,000 annual income to Husband.

### 1. Recent Work History

As the family court noted, Husband earned $95,000 annually at his most recent job. He had been employed with that

---

5. Husband earned approximately $1,800 teaching a course at DeVry Institute between the first and second dates of this hearing. He did not provide any portion of that money to Wife, testifying he used it to repair his car and pay past-due car payments and insurance.

company for three years. In addition, Husband traditionally earned several thousand dollars a year by teaching as an adjunct professor at area colleges. According to the record, he had earned $82,000 plus teaching pay in 2004. Prior to that, Husband's annual salary is a little difficult to discern, but he appears to have earned a total income of $66,000 in 1997 and approximately $64,000 in 1994.

## 2. Occupational Qualifications

Husband has a master's degree in technology and an undergraduate degree in career occupations. He was employed through his enlistment in the Air Force prior to 1991. According to Husband's testimony, his skill set and education were most suited for work in the manufacturing sector.

## 3. Prevailing Job Opportunities

The only evidence in the record on this point is Husband's testimony that he has applied for numerous positions, including those for which he is over-qualified, and he has been unable to find a job. Husband testified he had applied for jobs at Lowe's and Home Depot but was rejected because the employer believed he would leave the position once he found a better job. Husband admitted he had not applied for work at McDonald's or other comparable establishments because he believed the cost of gas to get to work, when subtracted from his earnings, would not permit him to make his $75 per week payment.

## 4. Earning Levels in the Community

The record contains no evidence on this point other than Wife's assertion that because Husband knew how to "manipulate the system," he should be able to earn what he had earned at his most recent employment with the Cooley Group.

Little evidence is present of bad faith on Husband's part. While that is not determinative of the issue, it is to be considered and goes to the credibility of his testimony that he has attempted to find work and has been unable to do so. The record is bereft of any testimony establishing the job opportunities or earning levels in the community that might contradict his testimony. Husband has a good recent work history, but his qualifications, while high, are confined to a specific area.

When Husband earned $64,000 per year, it was in the field in which job opportunities have significantly decreased. That earning capacity, even though it may have been accurate a decade earlier, does not clearly translate into a job market in which similar jobs are no longer readily available. That being said, Husband is not permitted, as Wife argues, to simply do nothing because the job market has changed. Furthermore, Husband admitted he had not sought all employment as he eschewed McDonald's because of the low wages and high price of gas for transportation. That Husband cannot find any employment is somewhat incredible. The record shows he did earn some income from teaching although it was not full-time. Based on all of the foregoing, we conclude the family court abused its discretion in imputing $64,000 annually to Husband. Accordingly, we remand this matter to the family court for it to calculate Husband's income based on the evidence in the record.

### C. Wife's Financial Need

 Husband also argues the family court erred in finding Wife required financial assistance in order to meet her reasonable living expenses. We disagree.

Husband contends Wife offered contradictory testimony regarding some of the expenses listed on her financial declaration. However, Husband does not dispute Wife is the custodial parent to the two minor children and the parties' son Kyle was living with Wife while he was attending college. Nor does Husband dispute the mortgage payment for the marital home was about $1,000 per month and Wife's net income was approximately $1,987 per month. Furthermore, Husband never indicated in his testimony Wife would not need assistance to meet her reasonable living expenses. He simply testified he had encouraged Wife to downgrade her lifestyle since their separation. Based on these figures and deferring to the family court's judgment as to Wife's credibility, we find the family court did not err in concluding Wife needed financial assistance from Husband to meet her reasonable living expenses. See Doe v. Roe, 386 S.C. 624, 630–31, 690 S.E.2d 573, 577 (2010) (stating the family court is in a better position "to evaluate [witness] credibility and assign comparative weight to their testimony").

## II. Retroactivity

 Finally, Husband contends the family court erred in making the award of child support and alimony retroactive. We disagree.

Initially, this issue is not fully preserved for our review. In his motion for reconsideration Husband states:

Plaintiff[ ] request[s] that the [c]ourt reconsider its findings as to the amount of child support ordered. The amount is based upon an imputed income that Plaintiff does not receive and applies retroactive to August 2006. There was no evidence of "bad faith" on Plaintiff's part in being discharged from employment or in not being able to find employment.

While the retroactive application of the child support award is mentioned, Husband fails to mention the retroactive application of the alimony award. Therefore, any question regarding the retroactive award of alimony is not preserved. *See S.C. Dep't of Transp.*, 372 S.C. at 301–02, 641 S.E.2d at 907 (stating to be preserved for appellate review, issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity).

 With respect to the retroactive award of child support, the only argument Husband sets forth in his appellate brief is that the family court erred in creating such a substantial arrearage when he has no means to pay it. We discern no abuse of discretion in making the child support award retroactive, but we note the amount of any arrearage must be adjusted to reflect Husband's income as determined on remand. *See Thornton v. Thornton*, 328 S.C. 96, 115, 492 S.E.2d 86, 96 (1997) ("The decision to order retroactive support rests within the sound discretion of the family court and should not be reversed absent an abuse of discretion by the family court.").

## CONCLUSION

We find the family court did not err in determining Wife requires financial assistance from Husband to meet her reasonable living expenses, and we conclude the issue regarding

the parties' standard of living during the marriage is not preserved for our consideration. We reverse and remand the issue of the amount of income to be imputed to Husband to the family court to be determined in accordance with the evidence presented at trial. We further find the family court did not abuse its discretion in making the alimony and child support awards retroactive. However, any arrearages should be calculated based on the amount of income imputed to Husband on remand.

Accordingly, the decision of the family court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

WILLIAMS, J., concurs.

PIEPER, J., concurs in a separate opinion.

PIEPER, J., concurring:

I concur in the decision to remand. However, I write separately because I would clarify that the party asserting voluntary underemployment or voluntary unemployment should carry the initial burden of proof on the issue.

South Carolina has not yet addressed this issue; however, other states have found that the party asserting voluntary underemployment or voluntary unemployment shoulders the burden of proof at the time of the initial determination. *See, e.g., Prisco v. Stroup,* 3 A.3d 316, 320 (D.C.2010) ("When one parent seeks to impute income to another who has involuntarily lost her job, the burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment by showing that more lucrative work was currently available.") (internal quotation marks and citation omitted); *McCants v. McCants,* 984 So.2d 678, 681 (Fla.Dist.Ct.App.2008) (noting the party asserting the voluntary underemployment of his or her spouse shoulders the burden of proof); *Burkley v. Burkley,* 911 So.2d 262, 269 (Fla.Dist.Ct.App.2005) (finding when the wife offered no evidence of the husband's ability to be gainfully employed and relied solely on the fact that he had previously worked, the wife's claim of voluntary underemployment must fail because she wrongly attempted to shift the burden of proof); *Staffrey*

*v. Smith,* 2010–Ohio–1296, 2010 WL 1177647 at * 7 (Ohio Ct.App. Mar. 25, 2010) ("When one parent claims that the other parent is voluntarily underemployed, the parent making this claim has the initial burden of proof.... Once the parent making the voluntary underemployment claim has met this burden, the burden shifts to the underemployed parent to show that he or she is working at his or her potential.") (internal citations omitted); *Wine v. Wine,* 245 S.W.3d 389, 394 (Tenn.Ct.App.2007) (reversing the denial of the petition to reduce child support because the trial court erroneously placed the burden on the father to prove that he was not willfully underemployed when the burden of proof was on the mother); *In re B.R.,* 327 S.W.3d 208, 213 (Tex.App.2010) ("Once the obligor has offered proof of his current wages, the obligee bears the burden of demonstrating the obligor is intentionally underemployed."); *In re J.G.L.,* 295 S.W.3d 424, 427 (Tex.App.2009) (describing the analysis for voluntary underemployment and noting that once the obligor's wages are established, the burden shifts to the obligee to demonstrate the obligor's intent to decrease income for the purpose of reducing child support payments); *Mir v. Mir,* 39 Va.App. 119, 571 S.E.2d 299, 304 (2002) ("The burden is on the party seeking the imputation to prove that the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available.") (internal quotation marks and citation omitted); *Blackburn v. Michael,* 30 Va.App. 95, 515 S.E.2d 780, 784 (1999) (holding the court may impute income to the party asserting a need for support based on a finding of voluntary underemployment, but the burden of proof is on the party seeking imputation).

Accordingly, in the best interests of the parties' children and because this burden of proof issue has not been addressed in our jurisprudence, I would allow the record to be reopened on remand with the burden appropriately noted.